# John Daum v. Ira Cooper.

1. Commissioners of Highways—*Rules of Government in Changing Course of Drains.*—Highway commissioners are governed by the same rules as adjoining land owners in changing the courses of drains.

2. Same—*Drains Constructed by License—Secs. 1 and 3, Act of 1899.*—Whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners, or where the owner or owners of adjoining or adjacent lands shall hereafter, by mutual license, consent or agreement, be permitted to connect a drain with another already so constructed, or where the owner or owners of the lower lands have heretofore or shall hereafter connect a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein. Whenever drains have been or shall be constructed in accordance with this act, none of the parties interested therein shall, without the consent of all the parties, fill the same up, or in any manner interfere with the same so as to obstruct the flow of water therein; and the license, consent or agreement of the parties herein mentioned need not be in writing, but shall be as valid and binding if in parol as in writing, and may be inferred from the acquiescence of the parties in the construction of such drain.

3. Same—*Right to Revoke Oral License.*—The right to revoke any such oral license shall be exercised within one year.

4. Watercourses—*Right of Owner of Dominant Estate to Cast Water upon Servient Estate.*—The owner of the dominant estate has the right to collect water and cast it in increased volume upon the land of another so long as it is confined to its natural channel.

**Action on the Case**, for damages done by diverting a watercourse. Appeal from the Circuit Court of Lee County; the Hon. James Shaw, Judge presiding. Heard in this court at the April term, 1902. Affirmed. Opinion filed July 18, 1902.

O'Brien & McHenry and Henry S. Dixon, attorneys for appellant.

D. W. Baxter and R. S. Farrand, attorneys for appellee.

Mr. Justice Dibell delivered the opinion of the court.

This was an action on the case brought by Cooper against Daum, in which Cooper recovered judgment for

§25, from which Daum appeals. The original declaration contained one count, and an additional count was filed later. A special finding by the jury was practically against plaintiff as to the additional count, so that only the original declaration need be considered. It charges the plaintiff owned certain real estate in Alto township in Lee county; that defendant, a commissioner of highways in said town, for the purpose of injuring plaintiff's lands, cut certain ditches across a certain highway and put culverts therein, and took out certain culverts across said highway, and thereby caused water to flow upon plaintiff's lands and damage plaintiff's lands and buildings, and thereby caused rain, standing and surface water, to flow in a different direction and channel, and with much greater force and violence than it of right ought to have and otherwise would have done upon plaintiff's lands, and damaged them. The plea was not guilty.

There is very little conflict as to the main facts. Cooper owned the northeast quarter of section 29. A highway ran north and south through the center of the quarter section, and an east and west highway ran along its north line. Cooper's residence and farm buildings were just south of said east and west road on the west side of the north and south road. James Smith owned the land north of Cooper on both sides of the north and south road. Daum owned the land south of Cooper, west of the north and south road. The general course of the water over these lands is southwesterly. In a state of nature the water rising on Smith's land east of the north and south road, and the water coming from lands northeast of his, passed across said road at two places and went west some seventy rods on Smith's land, and then turned south and ran southerly across the east and west road some seventy rods west of Cooper's corner, and across Cooper's land and to and upon Daum's land. The water from Cooper's land east of the road passed in a state of nature across said road at points 400, 700, 1,000 and 1,950 feet south of Cooper's corner and passed westerly and southwesterly and then southerly over his land west of the road and then to and upon Daum's land.

Some eighteen or nineteen years before this suit was begun the highway commissioners graded said north and south road between said Smith lands and cut a ditch on the east side of the pike or grade and thereby brought to the corner where the Cooper residence was the water coming from Smith's land east of the road and from other lands northeast of his, all which water in a state of nature would have passed about seventy rods west of that road over Smith's land and then would have turned south and crossed the east and west road about seventy rods west of Cooper's home buildings. The commissioners placed a culvert in the north and south road, on the north side of the east and west road, to conduct this water across to the west side of the north and south road, but there was no ditch on the east and west road to carry the water west to the depression seventy rods west of that corner, nor any pike to restrain the water from flowing upon Cooper's lands at that corner where his farm buildings were, and it did so flow where it never flowed in a state of nature. To avoid this injurious result Cooper, at his own expense, made the following changes in the road : He took out the culvert on the north side of said east and west road which conducted said waters to the west side of said north and south road; he cut through the east and west road on the east side of the north and south road and placed a culvert there, thus conducting said waters across the north and south road, and he carried said waters south along a ditch on the east side of said north and south road for about 1,400 feet south from said corner. At that point he placed a culvert in said north and south road and carried said waters to the west side of said road, and then carried them in the ditch on the west side of said road south to his south line. He placed a culvert in said road 1,950 feet south of the corner to conduct other waters from the east to the west side of the road. He also put an eight-foot culvert across the highway at his south line to carry to the west side of the road waters collecting in the ditch on the east side of the road at that point, and he dug a ditch along his south line west of the

road which carried all said waters on his own land west to
the point where in a state of nature they all passed upon
Daum's land, and there discharged said waters in their nat-
ural course.   He also  built  banks along  the bench on  the
west side of the north and  south road  at certain  places to
prevent the water in the west ditch  flowing upon his land.
The  effect of these changes  made by  Cooper  was that all
the waters from Smith's  lands  east of  the  road  and from
lands northeast of Smith, which the highway  commission-
ers had brought to his corner and discharged upon his land
where his home buildings were, contrary to the natural course
thereof, and all the waters flowing  in the course of nature
at various points  from Cooper's  land  east of the road to
and  over  his lands  west of the  road, were  collected  in
said road ditches and carried to his south line and there car-
ried west to the depression where, in the course of nature,
all  said  waters flowed upon  Daum's land.   Cooper thus
avoided  the  injury the  commissioners had  inflicted  upon
him and further benefited his own land..  As he owned the
land on both sides of the road the work was done on land
in which he owned the  fee, subject to the public use.   He
made these changes about  fifteen  years  before the griev-
ances  herein complained of.   Plaintiff  offered to prove he
had  permission  from the highway commissioners to do this
work, but an  objection thereto was  sustained because he
did not offer to show  that fact  by their record.   It does
not appear that  the  commissioners as a  body  have  ever
made any objection to the  course  pursued  by  Cooper, but
apparently they have ever since acquiesced therein and are
still  content  with  that  method of  conducting the water.
Daum has been  a  highway commissioner many years, and
seems to have been commissioner when the work  injurious
to Cooper was originally done on the highway between the
Smith lands.   About two years after Cooper made these
improvements Daum started to take out the culvert Cooper
had placed across the east and west road at the corner, but
Cooper asked him if  he had the consent of the other com-
missioners and he said he had not, and Cooper told him he

put it in under a permit from the other commissioners and forbade Daum taking out the culvert without the action of the other commissioners, and Daum then desisted. Up to the time of the acts by Daum here complained of, nothing appears showing that the commissioners, as a body, or the majority of them, either by any recorded action or in any other manner, ever questioned the improvements Cooper had made. Upon this record the commissioners, as a body, must be deemed to have acquiesced therein.

Beginning in the fall of 1899, Daum made the following changes in the system constructed by Cooper and which had been in force for fifteen years: He took out the eight-foot culvert in the road at the south line of Cooper's land, and put in a twenty-inch tile at that point. He removed the culvert Cooper had placed in the road 1,400 feet south of the corner, and instead placed a culvert in the road 1,000 feet south of the corner, or 400 feet nearer Cooper's farm buildings. He closed the culvert 1,950 feet south of the corner. He took out the culvert at the corner crossing the east and west road on the east side of the north and south road, and thus stopped the flow south of the waters from the Smith land and northeast thereof, and placed a culvert in the north and south road on the north side of the east and west road, thus carrying said waters through the north and south road and discharging them on the north side of the east and west road where there was no ditch sufficient to carry them west seventy rods to their natural course, nor any turnpike sufficient to prevent their passing south to Cooper's home and buildings, as they did. It is clear these acts injured Cooper's property.

Daum claims that the fact he was a highway commissioner at the time was a complete defense. He was but one of three. He does not claim the board, as a body, or any one of his associates, even orally, ever authorized him to do the acts complained of and to destroy the drainage system which Cooper had constructed at his own expense and with such long acquiescence by the commissioners. Daum argues he turned this water into what was originally

its natural course, which is true in part. But the commissioners as a body had not decided this should be done. Daum was only the minority, and could not act as the majority. The board itself could not have done this without going further and restoring to its original course the waters from the Smith land and northeast thereof which originally went nearly seventy rods west of the highway, much of it at a point far north of Cooper's land, before turning south, and which the highway commissioners nineteen years before had brought down the road to Cooper's corner, discharging it upon Cooper's land where his home was. Daum undertook to set aside the corrective Cooper had applied, while leaving in full force the original wrong the commissioners had done Cooper. If Daum had restored to its original course the waters which the commissioners had diverted therefrom, much of the injury here complained of would not have occurred. Again the commissioners are governed by the same rules as adjoining land owners. (Young v. Commissioners of Highways, 134 Ill. 569.) Sections 1 and 3 of the act of 1889 relating to drains constructed by license are as follows:

" Section 1. That whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners, or where the owner or owners of adjoining or adjacent lands shall hereafter by mutual license, consent or agreement, be permitted to connect a drain with another already so constructed, or where the owner or owners of the lower lands has heretofore or shall hereafter connect a drain to a drain constructed by the owner or owners of the upper lands, then such drain shall be held to be a drain for the mutual benefit of all the lands so interested therein.

Section 3. Whenever drains have been or shall be constructed in accordance with this act, none of the parties interested therein shall, without the consent of all the parties, fill the same up or in any manner interfere with the same so as to obstruct the flow of water therein; and the license, consent or agreement of the parties herein men-

tioned need not be in writing, but shall be as valid and binding if in parol as in writing, and may be inferred from the acquiescence of the parties in the construction of such drain."

Section 4 requires that the right to revoke any such oral license shall be exercised within one year. If this act controls highway commissioners as it does private owners, then this system of drainage had become an established right by long acquiescence. Even if public necessity and the security of the highway might authorize the highway commissioners to make changes, yet that could not be done till the necessity arose. The first change complained of was made by Daum without any pretense that the condition of the highway required it. Before the other changes were made there had been a slight washout in the highway, easily repaired, and perhaps attributable to the change Daum had already made. There is no reasonable claim that the state of the highway demanded these changes, and the commissioners had not, nor had the majority of them ever so decided. We conclude Daum's position as a highway commissioner was not a justification.

We think it obvious that Daum made these changes for the benefit of his own land, south of Cooper's land and west of the road. Was he justified by his position as a servient proprietor? The ditches and culverts constructed by Cooper brought all this water to Daum's land at the place where, in a state of nature, his land had always received it, but it brought it there more swiftly; and if the water had spread out over Cooper's land first, some of it would have evaporated or seeped into the soil. That Cooper had a right to collect the water and cast it upon Daum's land in its natural channel or course more rapidly and in greater quantity than in a state of nature, was determined in Peck v. Herrington, 109 Ill. 611. The manner in which Cooper conducted the water over his own land before it reached Daum's land was a matter of no concern to Daum as a mere private citizen and owner of the servient heritage, so long as it reached Daum's land in the same course where, in a state of nature, said water was accustomed to flow.

We find no reversible error in the instructions given for plaintiff, when considered as a series, though the first is somewhat confusing. So far as the instructions given at defendant's request conflict with those given for plaintiff, those given for defendant are incorrect; but of that defendant can not be heard to complain.

The judgment is affirmed.