## DRAINAGE RIGHTS OF AN UPPER PROPRIETOR.

Common Pleas Court of Franklin County.

GEORGE LOUIS FRY ET AL v. McCLELLAND AGLER.

Decided, May, 1912.

*Ditches and Drains—Surface Water May be Hastened Toward Its
Natural Outlet—Lower Land Owner Without Remedy, When.*

Injunction does not lie upon petition of a lower proprietor to prevent
the collecting of water from a wash into a ditch and the hastening
of it in its course toward the land of said lower proprietor instead
of permitting it to spread over the field from which it was gathered,
provided in so doing it is not diverted from its usual drainage
channel or depression but the flow is merely expedited toward the
natural outlet.

*Donaldson & Tussing,* for plaintiffs.
*M. E. Thrailkill* and *J. F. Rogers,* contra.

RATHMELL, J.

The evidence upon the whole made a question of defendant's
right to collect into a ditch the surface waters which came upon
his field through natural drainage channel, and to deliver same
at a point in the natural drainage channel where it left his lands
through a space about fifteen or twenty feet wide. The widest
part of the natural depression leaving defendant's land was per-
haps about eighty feet wide, but the lowest portion of the na-
tural depression was from fifteen to twenty feet. On
the north side of defendant's farm there was a washed-

out channel or depression extending about twenty rods, more or less, leading from the road down to the middle of the field, then disappearing. Through this channel the water from above, in wet times, was accustomed to spread out over several acres, then find its way through the space fifteen or twenty feet wide on to the land of the plaintiff, the lower proprietor. A tile ditch, some years ago, was laid through the *natural depression* across the farms of the parties and other lower proprietors to a proper outlet. It appears from the evidence that in times of wet weather this tile ditch was never able to catch and carry all the water which came that way, and that more or less surface water at such times came over the surface of the natural depression. Across the lower portion of defendant's field and over plaintiff's land below there was no surface ditch, but in wet times the surface water, as stated, from above through the wash on the north side of defendant's land spread over defendant's land, thence through the narrow space mentioned on to plaintiff's land, where it spread out some and found its way on down through a natural depression in the land to the outlet below, or was taken up by the tile drains.

About the 28th of February, 1911, the defendant made a plowed ditch from a point opposite the said depression fifteen or twenty feet wide to the end of this wash, leading from the road to about the middle of his field, connecting the wash with said depression or near to it. This is the grievance complained of, and plaintiff contends that defendant can not thus collect and hasten the water and cast it upon him.

There appears to have been some modification of the rule as to the drainage of surface waters as formerly announced. For example, in *Kemps* v. *Widows' Home*, 6 Ohio Dec. (Reprint), page 1052, referred to in my former opinion, the matter was thus stated in the court's opinion, speaking of the flow of surface waters from the higher to the lower land:

"In such a case the doctrine is well settled, with some exceptions which do not seem to be very well defined in Ohio, to the effect that the flow may be increased to a certain extent by the necessary and proper use of the higher land; that an increase

by the act of man of the water which flows upon the lower estate is an invasion of the right and actionable *per se*—that the servitude in such case is to receive the natural flow of water as it comes from the heavens in the form of rain and snow.''

And again in *Livingston* v. *McDonald*, 21 Iowa, 160, it is stated:

''The lower land owed to the high land the service or servitude of being bound to receive all the water which naturally (without the hand of man) flowed down upon it. The inferior proprietor could not obstruct the flow to the injury of the superior, nor could the latter make the servitude more burdensome.''

It now appears to be the prevailing rule that the flow of surface waters along natural depressions or drain-ways may be hastened and incidently increased by artificial means so long as the water is not diverted from its natural flow.

In *Mason* v. *Commissioners*, 80 Ohio State, 151, 159, the court in opinion say:

''It is well settled under the rule of both the common and civil law that surface water can not be collected into a ditch and discharged upon the lands of another to his damage; but the land owner may, in the reasonable use of his land, drain the water from it into its natural outlet, whether that be a water course or a natural drainage channel, and thus increase the volume and accelerate the flow of water of such water course or channel without incurring liability for damages to the owners of lower lands.''

\* \* \* \*

(And quoting from *Farnham on Waters and Water Rights*):

''It will also be seen that the civil law rule has been modified to some extent so as to permit hastening of the flow of water toward the natural outlet which was not originally permitted Therefore no arbitrary rule can be laid down which will govern all cases, but each case must be dealt with upon its facts, applying the rule which will be reasonable under the circumstances, under the general rule that the water should be allowed as far as possible to seek its natural outlet.''

''When it is settled that there is a right to drainage along the natural depressions or drain ways, the question arises whether

the flow of water along these channels may be increased by artificial means. The great weight of authority answers that question in the affirmative. Therefore the owner of the upper property may improve it for any purpose for which he desires to use it, and may construct channels to hasten the flow of water if it is not diverted from its natural flow. This improvement may be for the purpose of agriculture, so that the upper proprietor does not increase the servitude of the lower proprietor by digging on his lands for the needs of cultivation a system of ditches to carry the water to the place from which it is discharged in the most advantageous manner for the cultivation of such lands." *Farnham on Water Courses,* Section 893.

"If water reaches the land of a servient proprietor at the place where, in the state of nature, it was accustomed to flow, the manner in which it is conducted over the dominant tenement is immaterial, even though it is collected in a channel and cast upon the lower land more rapidly and in greater quantity than it otherwise would have been." *Dam* v. *Cooper,* 103 Ill. App., 4.

"The owner of lands has a right to drain them by artificial ditches, although thereby the water is precipitated more rapidly and in greater volume on the lands of the adjacent proprietor which, in the absence of the ditches, would have flowed in a different direction and provided he acts with a prudent regard for the welfare of his neighbor." 68 Ala., 280; 44 Am. Rep., 147.

In 19 L. R. A. (N. S.), p. 167, there is collected in the note authorities on the right to hasten the flow of surface waters along natural drain ways. It is there stated and supported by a number of authorities:

"That the principle very generally accepted by the courts that the owner of higher land may not concentrate at one point surface water diffused over the surface and discharged in a mass upon the lower land, does not apply to natural depression or drain ways through which the surface water on the higher lands drains on to the lower land. On the contrary it is established by the great weight of authority that the flow of surface water among such depressions or drain ways may be hastened and incidently increased by artificial means so long as the water is not diverted from its natural flow."

And continuing the author, quoting from *Dayton.*v. *Drainage Commissioners,* 128 Ill., 271, says:

"The rule undoubtedly is that the owner of the higher tract of land has the right to have the surface water, falling or naturally coming upon his premises by rains or melting snow, pass off through the natural drains upon or over the lower servient lands next adjoining; and the owner of the dominant heritage has the right by ditches and drains to drain his own land into the channels which nature has provided, even if the quantity of water thrown upon the next adjoining lands is thereby increased."

In 30 A. & E. Ency. of Law, p. 337, discussing the subject of drainage of surface waters, after having stated the rule that the owner of lands which surface water has reached has no right to collect it into a ditch and discharge it upon the lands of another in quantity or volume exceeding what would have reached the latter by natural drainage, the author continues:

"This rule, however, does not prohibit the owner of lands from cultivating his lands or draining them by artificial ditches, though surface water is thereby precipitated more rapidly upon the lands of the adjacent owner below, provided he does not cause water to flow on such lands which, but for the artificial ditches, would have flowed in a different direction, and provided he acts with a prudent regard for the interests of such adjacent owner."

In the case of *Manteufel* v. *Wetzel,* 133 Wis., 619, it is held:

"An upper land owner is not liable for collecting in a ditch following the course of the usual flow of surface water the surface water which formerly spread over the surface and hastening its flow on the lands of the lower proprietor."

Farnham in his work, at Section 889-*f* discusses the cases of Minnesota and Wisconsin as unique.

"These states at first attempted to follow the common enemy or, as they call it, the common law doctrine, and they have succeeded in originating a position by which its servitude is sanctioned far in advance of anything known to the civil law, so that instead of adhering to the common enemy rule they have ap-

parently adopted a rule by which the upper owner has an unlimited right of drainage over the lower proprietor, whether it is a natural course or not.''

I should hesitate to cite this case as authority for the rule announced in this case in view of the foregoing criticism except that it apparently supports the rule where it is a natural draining course, such as we have in this case.

Under these authorities and the evidence in this case, in the interest of agriculture it appears just and proper that the water from the wash should be permitted to be collected into a ditch following the course of the usual flow of surface water and hastened to its natural outlet, instead of being allowed to spread over the surface of the field, so long as it was not diverted from the natural drainage channel or depression and would naturally flow in that direction. While the water is precipitated more rapidly upon the lands of Fry, no more water was caused to flow by the artificial ditch than came upon Agler, and none that, but for the ditch, would have flowed in a different direction.

It does not appear that the servitude was altered by the fact of the underground ditch. I was at first inclined to think it was; such might be the case if it appeared that all the water could readily have been turned into the tile ditch. But the evidence is that the tile ditch was of such size that this could not be done; that is, it appears that during wet spells more water came down than tile of that size could carry.

Defendant's claim that plaintiff has obstructed the drainage course is not sustained by the evidence. In accordance with the conclusion here reached that plaintiff is not entitled to the relief prayed for, plaintiff's petition and the defendant's cross-petition are dismissed.