# Walshe *v.* Dwight Mfg. Co.

*Bill to Enjoin Overflow of Land, and for Damages.*

(Decided April 25, 1912. Rehearing denied June 29, 1912.
59 South. 630.)

1. *Injunction; Scope; Damages.*—In order to enable the entire controversy to be settled in one suit, damages may be allowed in an action to restrain a respondent from casting water on complainant's land.

2. *Appeal and Error; Interlocutory Order; Taken on Final Order.*—Where no appeal is taken from an interlocutory order on demurrers to a bill, the same may be assigned for error on appeal from a final order dismissing the bill.

3. *Equity; Demurrer; Prayer.*—Where a bill stated a cause for equitable relief otherwise, it was not demurrable because it contained a prayer for damages barred by the statute of limitations.

4. *Same; Laches; Mode of Raising.*—Laches goes to the foundation of complainant's right, and bars it, whether first taken advantage of by demurrer, or by answer, or when raised by the proof.

5. *Tenancy in Common; Purchase of Interest; Presumption.*—Where a respondent casts surface water upon lands formerly owned by it and complainant in common, complainant cannot recover for injuries occurring before his purchase from respondent, it being presumed that there was a depreciation in the purchase price corresponding to the amount of the injury.

6. *Same; Waste by Co-Tenant.*—Where a respondent, while a tenant in common, dug a ditch for the benefit of land owned by him in severalty, which cast surface water upon land owned in common

with complainant, complainant was entitled to restrain the nuisance, and complainant's purchase of respondent's interest after the ditch had been dug, did not bar his right to such relief.

7. *Waters and Water Courses; Surface Waters; Rights.*—While a landowner may drain surface water upon his land to that of a lower proprietor, for the benefit of agriculture, he may not create new channels or open ditches which casts the water upon the lower tenant in a manner in which it was not accustomed to flow, and thus greatly injure the lower proprietor.

8. *Same; Laches; Injunction.*—The delay of a lower proprietor in bringing his bill to enjoin the casting of surface water on his land, when less than the period of limitation, is not laches, where there has been no change in the condition of the parties.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Bill by B. T. Walshe against the Dwight Manufacturing Company, to enjoin the casting of surface waters upon his lower land, and for damages. From a decree sustaining demurrers to the bill complainant appeals. Reversed and remanded.

GOODHUE & BLACKWOOD, for appellant. Where no appeal is taken from interlocutory order, such order may be assigned for error on an appeal from a final order.—*Nelms v. McGraw,* 93 Ala. 345; *Wadsworth v. Goree,* 96 Ala. 227; sec. 2838, Code 1907. One tenant in common is liable to his co-tenant for injury to the common property.—17 A. & E. Enc. of Law, 671. A co-tenant cannot injure the common property in the manner described in the amended bill of complaint.— Freeman on Co-Tenancy, sec. 249; 63 Am. Dec. 644; 32 Am. Dec. 387; 51 Am. Dec. 655; 99 Am. Dec. 772; 33 Am. Dec. 604. The court was evidently misled by certain language used in the case of *Hughes v. Anderson,* 68 Ala. 286, which was subsequently explained and qualified in the case of *Nininger v. Norwood,* 72 Ala. 282, where the distinction is clearly drawn between the right to create new channels, and the right to

discharge water even in increased volume through accustomed channels.—*Martin v. Riddle,* 26 Pa. St. 415; *Crabtree v. Baker,* 75 Ala. 91; 47 Pa. St. 154, and cases cited. It requires ten years to bar the equitable remedy here invoked.—*Nininger v. Norwood, supra; Wright v. Moore,* 38 Ala. 393. The principle of laches constitutes no defense.—*Burden v. Stein,* 27 Ala. 104; *Scruggs v. Decatur N. L. Co.,* 86 Ala. 173; *First Nat. Bank v. Nelson,* 106 Ala. 535. The subsequent acquirement by the Dwight Company of Walshe's interest does not estop him in any way.—*Crommelin v. Coxe,* 30 Ala. 318; *City of Birmingham v. Land,* 137 Ala. 538.

DORTCH, MARTIN & ALLEN, for appellee. There is always a right of drainage from the upper to the lower land.—*Hughes v. Anderson,* 68 Ala. 280; *Daum v. Cooper,* 103 Ill. App. 4; 3 Farnum on Waters, sec. 893; *Templeton v. Vestloe,* 72 Ind. 134. There is nothing in the bill in this case to take it without the influence of the case of *Hughes v. Anderson, supra.; Lindsey v. So. Ry.,* 149 Ala. 349; 16 Ohio St. 343. In the case of joint tenancy the court will not, save in exceptional cases, grant injunctive relief and take charge of a man's property.—51 Am. St. Rep. 715. There was staleness of demand.—*Salmon v. Winn,* 153 Ala. 544; 55 Ala. 533; 106 Ala. 424; 86 Ala. 177. Frank Walshe could not have maintained the bill against the Dwight Company.—*Troy v. Coleman,* 58 Ala. 570; 10 A. & E. Enc. of Law, 1189. The presumption is indulged that when the Dwight people sold Frank the land, it reduced the purchase price on account of the ditch, and the same is true of Frank when he sold to B. T. Walshe. The question of damages should have been remitted to a court of law to be determined.

SAYRE, J.—Prior to April, 1899, complainant in this cause, who takes this appeal, owned an undivided one-third interest in a tract of land lying immediately south of the track of the Alabama City, Gadsden & Attalla Railway. Until July, 1901, defendant owned the remaining two-thirds interest in the property. On July 1, 1901, defendant conveyed its two-thirds to one Frank Walshe, son of the complainant, who in 1903 conveyed to complainant, who, since that date has owned the entire interest. All the while defendant has owned in severalty the tract lying to the north of the railway and complainant's tract. In 1899 defendant caused a ditch to be dug upon and through its tract north of the railway and collected into it the surface water from that tract so as to discharge the same upon the tract owned by complainant and defendant as tenants in common. At the same time defendant dug a ditch over and through the last-named tract so as to receive and carry away the water discharged upon it by the ditch from the north. The bill was filed in 1908, and as amended in 1909 it avers that the ditch over and through the north tract "was not the accustomed channel for said water, but was a new channel created by the said respondent for the water falling or originating upon the lands of respondent; that by means of said ditch the said surface water has been, and is, conducted by a new channel in unusual quantities to the said land lying south of the center of the track of said railway to the great injury of said land; * * * that at every rainfall since the month of April, 1899, the said Dwight Manufacturing Company has continuously caused said surface waters by artificial means to be collected in said ditches, so dug by it, in a mass and in undue and unnatural quantities, and precipitated in undue and unnatural quantities upon the said

lands which lie south of the center of the track of the said railway," making the ditch through complainant's land wider and deeper, washing away and destroying great portions of the soil, until the value of complainant's land has been greatly impaired thereby. The prayer is for an injunction requiring defendant to cease concentrating the water in the ditch and discharging same upon the land of complainant. The bill also asks generally that complainant be compensated in damages for the injury done to his land. The chancellor sustained a demurrer to the bill, and, no amendment having been offered within the time limited by the decree, at a later date the bill was dismissed.

The prayer of the bill claims damages in a general way for the injury done to complainant's property by the alleged nuisance. Demurrer, assigning grounds to be considered hereafter, was interposed to the bill as a whole, and specifically to that part of it which claimed damages "suffered prior to one year before the bill was filed, because all such claims are barred by the statute of limitations of one year." In the conclusion of its brief defendant suggests that at least the last-named ground of demurrer was properly sustained, and that a general decree sustaining a demurrer will be affirmed if any one ground was well taken.—*McDonald v. Pearson,* 114 Ala. 630, 21 South. 534. If there be a single ground of demurrer which could be properly sustained, complainant must amend to cure the defect thus pointed out before he can successfully review an erroneous opinion the chancellor may entertain in respect to other questions raised by the demurrer.—*Steiner v. Parker,* 108 Ala. 457, 19 South. 386. Pretermitting inquiry as to the correctness of the decree if it should be referred to that ground of demurrer which set up the statute of limitations, we think the rule of the cases in-

voked cannot be applied in the peculiar circumstances of this case. The demurrer sought to effectuate two different purposes, viz.: To strike the bill as a whole for alleged defects; to strike a part of the prayer as asking for relief appearing in part to have been barred by the statute of limitations. The last purpose of the demurrer might have been accomplished without affecting the equity of the bill as a whole. The special prayer objected to sought a relief ordinarily administered in the law courts. It neither added to nor detracted from the equity of the bill. Such relief in equity is permitted only that the entire controversy between the parties may be settled. Complainant's claim to relief in equity could not, therefore, be made to turn or depend upon a supplemental claim for damages awardable at law. A bill, stating equities which entitle the complainant to relief and praying for proper relief, is not demurrable for the reason that a prayer for further, but unwarranted, relief is conjoined.—*Rosenau v. Powell,* 173 Ala. 123, 55 South. 789, and authorities there cited. If the chancellor thought the bill properly stated a case for equitable cognizance, but that the prayer for damages needed amendment, and saw fit to express his opinion as to the last, a proper decree would nevertheless have overruled the demurrer to the bill as a whole. The decree dismissing the bill was final, of course, and it is well settled that when no appeal is taken from an interlocutory ruling on demurrer error therein may be assigned on appeal from the final decree.—*Nelms v. McGraw,* 93 Ala. 245, 9 South. 719. We think, therefore, that those questions which go to the equity of the bill must have consideration on this appeal.

We think, further, that the inquiry into the equity of the bill is not seriously embarrassed by considera-

tion of the fact that the parties formerly owned in common the tract alleged to have been injured by defendant's arrangements. Damages claimed will be properly limited by the statute of limitations, if pleaded, as no doubt it will be. This will eliminate all consideration of pecuniary compensation for any original injury done to complainant's land by the digging of the ditch thereon, and as well damages claimed for any further impairment of its value prior to one year before the filing of the bill. As for the injury done before that date to the interest formerly owned by the defendant, that must also be held to have been considered and merged in the price paid therefor by complainant. We cannot, however, assume, as defendant seems in its argument to assume, that the ditch dug by defendant over and through the property now owned in severalty by complainant because it was dug by a cotenant who may be presumed to have had in mind its own interest in caring for the property, did not, for that reason, work injury or amount to waste, but was, on the contrary, an improvement of the property. In many cases, no doubt, it is better for the servient estate that it should receive and carry away water from higher ground through a defined channel, and that several natural channels should be replaced by one artificial channel, rather than that the water should be left to diffuse itself and linger in a natural way upon a more considerable part of the surface; and but for defendant's ownership of the dominant estate in this case a presumption would probably arise that at least waste and injury were not intended, and proper deference would be shown to the judgment of the cotenant in the management of property partly his own; but in the circumstances shown by the bill it may well be that defendant was serving a paramount interest in the superior heri-

tage at the expense of the inferior. And the effect of
the bill is to so charge. That defendant, at the time
of the arrangements complained of, owned an undivid-
ed interest in the tract, did not bar complainant's right
to prevent and enjoin a wrong to his interest, nor does
it now stand in the way of his relief against a perpet-
uation of the wrong. Under the just rule of modern
times a tenant in common may restrain waste by his
cotenant.—38 Cyc. 98. "One tenant in common will be
liable to his cotenants for an injury to the common
property. Thus he will be liable in trespass for flood-
ing the common property without the consent of his
cotenants by means of a dam erected on the land of
which he is the sole owner."—17 Am. & Eng. Encyc. of
Law, 671. If complainant was entitled to enjoin the
continuing nuisance complained of at the time of its
creation, he has not lost that right by a purchase of
his cotenant's interest either directly or mediately from
his cotenant. The equity of the bill rests altogether
upon those facts which require the court's present in-
terference to prevent the further maintenance of a nui-
sance upon defendant's land.

It may be that the railroad track intervening be-
tween the lands of these parties should have some in-
fluence upon their respective rights and the fate of
the complainant's bill. However, the bill shows only
that the track is so located; of the time, manner and
circumstances of its construction nothing appears. So,
then, considering the case presented by the bill as one
between the owners in severalty of upper and lower
contiguous grounds, we are to say what are the re-
spective rights of the parties. We read the bill as hav-
ing reference to surface water only, to the proper man-
agement of the rainfall upon defendant's land. We do
not find any averment that the obnoxious ditch upon

defendant's land is made to collect and throw upon complainant any water which would have flowed in another direction had the surface of the ground remained undisturbed. We construe the bill to mean that defendant has so arranged the drainage of its land that, as often as it rains, the water, which would otherwise flow over a broader surface or through other channels differently located, is collected into a new channel and thrown upon complainant's land to its injury. The bill means, too, that the flow of water has been accelerated. For such cases this state, in common with most others, has adopted a rule which prevents the gathering of water into a body and casting it upon the lower owner, or changing the natural course of drainage.— *Hughes v. Anderson,* 68 Ala. 280, 44 Am. Rep. 147. However, the chancellor's decree is supposed to have been determined in part by some language used in the case just cited. The court quoted from *Kauffman v. Griesemer,* 26 Pa. 407, 67 Am. Dec. 437, this language: "It [the law] never would nor could refuse to the superior proprietor the right to aid and direct the natural flow. Hence, for the sake of agriculture—agricolendi causa—a man may drain his ground, which is too moist, and, discharging the water according to its natural channel, may cover up and conceal the drains through his lands; may use running streams to irrigate his fields, though he thereby diminishes, not unreasonably, the supply of his neighbor below; and may clear out impediments in the natural channels of his streams, though the flow of water upon his neighbor be thereby increased. * * * It is not more agreeable to the laws of nature that water should descend than it is that lands should be farmed and mined; but in many cases they cannot be if an increased volume of water may not be discharged through natural chan-

nels and outlets." And the language of Stone, J., was: "As to the water theretofore accustomed to flow on the lands of the plaintiffs, defendant was not bound to remain inactive. He was permitted to so ditch his own lands as to drain them, provided he did so with a prudent regard to the welfare of his neighbor, and provided he did no more than concentrate the water, and cause it to flow more rapidly and in greater volume on the inferior heritage." In *Nininger v. Norwood,* 72 Ala. 282, 47 Am. Rep. 412, this court said: "Following the case of *Kauffman v. Griesemer,* 26 Pa. 407 [67 Am. Dec. 437], we held that the owner of the upper or superior heritages had not the right to create new channels for the water falling or originating upon his lands, but that he could improve his lands, though the volume of water discharged by its accustomed channels was thereby increased." This court also quoted the Pennsylvania court with approval as follows: "Nor has the owner of the upper ground a right to make any excavations or drains, by which the flow of water is diverted from its natural channel, and a new channel made on the lower ground; nor can he collect into one channel waters usually flowing off into his neighbor's fields by several channels, and thus increase the waste upon the lower fields." In those jurisdictions which hold, as this court has held, that as to real property there is a right to drainage of surface water along natural depressions or drainways, it is also held that the flow of water along these channels may be accelerated or increased by such artificial means as are required by good husbandry or other proper improvement of the surface of the ground.—3 Farnham on Waters, § 893; *Templeton v. Voshoe,* 72 Ind. 134, 37 Am. Rep. 150. As said by the Illinois Court of Appeals: "If water reaches the land of a servient proprietor at the place where, in a

state of nature, it was accustomed to flow, the manner in which it is conducted over the dominant tenement is immaterial, even though. it is collected in a channel and cast upon the lower land more rapidly and in a greater quantity than it otherwise would have been."—*Daum v. Cooper,* 103 Ill. App. 4. But the natural channels by which drainage is discharged must be conformed to. The natural flow cannot be materially changed to the injury of the lower owner.

Brief notice of one other point will dispose of this case. Appellee contends that the bill shows complainant to have been guilty of laches which ought to bar his remedy. The bill shows no circumstance, operating to the detriment of defendant, which might have been avoided by a more prompt assertion of complainant's rights. It shows nothing more in this regard than a delay short of the period which would bar the corresponding legal right—in this case, ejectment. In such case the analogy upon which equity, before the statute of limitations was made applicable to its remedies, attributed laches—a species of estoppel—to the complainant who delayed beyond. the period of limitation, required also that, where the delay had been short of that time, the special circumstance, the change in the condition or relations of the property or the parties, which would render interference inequitable, should be brought forward in the way of defense.—*Fowler v. Alabama Co.,* 164 Ala. 414, 51 South. 393. Laches, however, goes to the equitable groundwork of every bill, and the defendant is entitled to the protection of the doctrine, however its application to the complainant's case may be made to appear, whether by demurrer to the bill, by answer, plea, or for the first time in the proof.

[Zavelo v. Goldstein, et al.]

Tested by the principles and authorities to which we have referred, complainant's bill, upon demurrer, should have been sustained. The demurrer should have been overruled.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.