# Atlantic Coast Line Railroad Co. *v.* Woolfolk.

*Bill to Enjoin the Discharge of Surface Water Upon Lands of Complainant, and for Damage.*

(Decided May 30, 1912.   Rehearing denied June 29, 1912.
59 South. 633.)

1. *Waters and Watercourses; Discharge of Surface Water; Injunction.*—A lower owner may enjoin an upper owner from collecting and casting surface waters in an unusual manner upon his land.

2. *Same; Right of Lower Proprietor.*—Where a railroad company reconstructed its embankments and tracks so as collect a considerable amount of surface water, and diverted the natural flow of the water by turning it into artificial ditches and sewers, which had not before been used for such drainage, and thereby precipitated it on the land of the lower proprietor, flooding and injuring his property, the lower proprietor is entitled to relief regardless of whether his property is urban or rural; while an owner of upper urban property may improve it and thereby cast surface water on the land of another, he cannot collect such water and discharge it on the lower property.

3. *Same; Stoppage of Sewer; Liability of Railroad Company.*—A proprietor of land adjacent to a railroad right of way, which is drained by an underground sewer, cannot recover from the railroad company for the flooding of his land by surface waters, on account of the stoppage of the sewer by natural causes, unless the railroad company was bound to maintain and repair the sewer.

4. *Equity; Alternative Averment; Demurrer.*—Where alternative causes of action are set up in a single bill, each alternative must show a good cause of action, or the bill is rendered subject to demurrer.

[Atlantic Coast Line Railroad Co. v. Woolfolk.]

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Bill by Robert Woolfolk against the Atlantic Coast Line Railroad Company, to enjoin respondent from collecting and discharging surface water upon his land, and incidentally, for damages. Decree for complainant and respondent appeals. Reversed and remanded.

JOHN R. TYSON, and T. H. SEAY, for appellant. If the property of respondent is urban property, a fact not negatived by the averments of the bill, the court will find that fact to be true, and that fact will defeat the right to relief.—*Rapier v. Gulf City P. Co.*, 64 Ala. 330; *Hall v. Rising*, 141 Ala. 431; 87 Am. Dec. 625. The amendment did not eliminate or correct the original bill, but merely added a paragraph, and although demurrers were sustained to the original bill, the court erred in failing to sustain the same demurrers to the amended bill.—*Friedman v. Fennell*, 94 Ala. 570. The bill should show with clearness all matters essential to complainant's right to relief.—16 Cyc. 228; *Reese v. McCurdy*, 121 Ala. 425, and cases there cited. Each alternative must show a good cause of action to render the bill immune against demurrer.—*David v. Shepard*, 40 Ala. 587; *Taylor v. Dwyer*, 131 Ala. 90. Unless the respondent was charged with the maintenance and repair of the sewer, it would not be liable for overflows caused by a stoppage of the sewer from natural causes.

C. H. ROQUEMORE, and E. T. GRAHAM, for appellee. Whether the property be urban or rural, the upper proprietor has no right to collect surface water in ditches or other artificial channels and precipitate it in increased volume or unusual manner upon lower land.—*C. of Ga. v. Windham*, 126 Ala. 552; *S. A. M. R. R. Co. v.*

*Buford,* 106 Ala. 303; *Crabtree v. Baker,* 75 Ala. 91; *Ninninger v. Norwood,* 72 Ala. 277; *Hughes v. Anderson,* 68 Ala. 280; *Crommelin v. Cox,* 30 Ala. 318; *Polly v. McCall,* 37 Ala. 20; 30 A. & E. Enc. of Law, 335, 337, 338, 340, and note 3. Under these authorities it is submitted that the bill was sufficient in all its aspects, and that under the evidence the court properly granted the relief prayed.

MAYFIELD, J.—This suit is for injunction to restrain the defendant from discharging drainage and surface water upon complainant's land, and, incidentally, to recover damages therefor. The equity of such bills in this state is well settled by a long line of authorities. See the case of *Walshe v. Dwight Manufacturing Co., infra,* 59 South. 630, which states the law and cites the authorities.

The appeal is taken from an interlocutory decree overruling demurrers to the bill as last amended. It is insisted by appellant that the bill is defective in failing to allege or show whether the locus in quo is within or without the city of Montgomery. It is true, as is contended by appellant, that the law fixing and defining the rights and duties of owners of land to control and dispose of surface water is different in municipalities from that applying in the country. This difference has been repeatedly pointed out by this and other courts. In the case of *Hall v. Rising,* 141 Ala. 433, 37 South. 587, it is said: "The rule adopted in this state from the civil law, which in general makes land legally subservient to the natural flowage of surface water, does not apply under the artificial conditions created by the building of cities and the improvement of city lots. Such in application has been recognized in cases wherein the court has affirmed the rule referred to.—*Farris*

& *McCurdy v. Dudley*, 78 Ala. 124 [56 Am. Rep. 24];
*Crabtree v. Baker*, 75 Ala. 94 [51 Am. Rep. 424]; *Nin-ninger v. Norwood*, 72 Ala. 277 [47 Am. Rep. 412]. See,
also, Gould on Waters, § 277; *Sentner v. Tees*, 132 Pa.
216 [18 Atl. 1114]; *Phillips v. Waterhouse*, 69 Iowa,
199 [28 N. W. 539, 58 Am. Rep. 220]."

Mr. Farnham, in his most excellent work on Waters
and Water Rights (volume 2, § 171b, pp. 909, 910),
thus states the rule as to city property: "Adjoining
proprietors have a right to improve their property as
they see fit, and one cannot complain of the ordinary
injuries consequent upon the other's improvements.
This rule includes the altering of the grade of the prop-
erty, so that one cannot complain if, by reason of the
other's raising the surface of his land, the natural flow
of surface water is changed, excepting so far as the in-
terference may be with a natural swale or depression
which forms a natural outlet for surface water, and in
such cases the better reason denies the right to inter-
fere unless a substitute for it is furnished. Municipal
corporations are entitled to the benefit of this rule.
Consequently, when they do more than merely raise the
grade of a street, they are not liable for thereby pre-
venting surface water from flowing onto the street from
adjoining property, except in some states which refuse
to permit any interference with the natural course of
drainage; nor are they liable for causing the water to
flow in the other direction onto the adjoining property.
There is, therefore, no duty to provide for the carrying
away the water so interfered with. In *Wakefield v.
Newell*, 12 R. I. 75, 34 Am. Rep. 598, this absence of
liability is placed upon the ground that the usual
changes of grade must be presumed to have been con-
templated and provided for at the laying out of the
highway."

The rule is thus stated by the New Jersey court, in the case of *Field v. West Orange,* 36 N. J. Eq. 119-121: "And though, by our law, there is no redress for the injury done by the diversion of the surface water in the grading or regulation of streets, the doctrine cannot be applied so as to give license to municipal authorities to discharge the waters of streets on private property, thus condemning it to the use of the public without compensation. Such an aplpication of the doctrine would not only be unreasonable, but would sanction flagrant and manifest injustice. A landowner has no right to cause, by means of artificial trenches or otherwise, the natural mode of discharge of surface water from his land on that of his neighbor to be changed to the injury of the land of the latter, by conducting it by new channels in unusual quantities to or on a particular part or parts of the latter's land.—Washb. on Easements, 353; Ang. on Water Courses, 108; *Bellows v. Sackett,* 15 Barb. [N. Y.] 96; *Foot v. Bronson,* 4 Lans. [N. Y.] 47. He has no right, for example, to build a house on his land, to collect rainfall in a gutter on it, and to discharge it by a spout on his neighbor's land. * * * The law on that subject is well stated by Judge Dillon as follows: "Authority to establish grades for streets, and to graduate them accordingly, involves the right to make changes in the surface of the ground which may effect injuriously the adjacent property owners; but where the power is not exceeded there is no liability, unless created by statute, and then only in the mode and to the extent provided, for the consequences resulting from its being exercised and properly carried into execution. On the one hand, the owner of the property may take such measures as he deems expedient to keep surface water off from him, or turn it away from his premises onto the street; and, on

the other hand, the municipal authorities may exercise their powers in respect to the graduation, improvement, and repair of streets without being liable for the consequential damages caused by surface water to adjacent property.'—Dill. on Munc. Corp. § 798. The same learned and judicious author withholds his assent from the doctrine that corporate authorities, by reason of their control over streets and their power to grade and improve them, have the legal right intentionally to divert the water therefrom to protect the streets and discharge it on the land of an adjacent proprietor, it may be to its destruction.—Id. § 799. The landowner is indeed compelled to bear (if he cannot himself protect his property against them) the consequences naturally flowing from grading and regulating the streets; but he is not compelled to submit to the destruction or injury of his land by intentional diversion of the water from the streets to and on his property for the benefit of the public. The municipal authorities have no right to single him out to bear, without compensation therefor, a public burden to the relief of the property of his neighbors."

Of course, the rights of individual owners in cities are not greater than those of the city itself, as to the control and discharge surface water. The same learned court, on a subsequent appeal of the case last cited, said: "The broad doctrine declared by some courts—that no right of any kind can be claimed in the flow of surface water, and that neither its retention, diversion, repulsion, or altered transmission will constitute an actionable injury—has never been adopted, in all its length and breadth, in this state. The Supreme Court has, however, held that, where damage results to an individual from the discharge of surface water upon his land, in consequence of the proper exercise of power granted

to a municipality to make and grade highways, no legal liability exists. Injury may be suffered, but in such case no damages can be recovered.—*Durkes v. Town of Union,* 38 N. J. Law, 21." *Field v. West Orange,* 46 N. J. Eq. 185, 2 Atl. 236. This court held, in the case of *Arndt v. Cullman,* 132 Ala. 540, 31 South. 478, 90 Am. St. Rep. 922, that a city is bound to protect a lot from the overflow from a street, where the waters are diverted from their natural channel, although the lot is below the grade of the street.

The bill in this case contains, among others, the following averment: "The defendant reconstructed some of its tracks and roadbeds, and collected a great amount of the surface rainwater draining from said hillside, and diverted the natural flow of the said water by turning a large portion of it into artificial ditches, and by turning some of it into sewers, which had not theretofore been used for such drainage, and precipitated said water upon said land of your orator, thereby overflowing and flooding said land under all, or nearly all, of said houses, causing the land to become wet and sobby and to stand under water, and also overflowing and flooding the street, or a great portion of the street, upon which your orator's land fronts." This averment was sufficient to give the bill equity, whether the locus in quo was within or without the city; and hence it was not necessary for the bill to show whether the lands were within or without the municipal boundaries.

The amended bill, however, was subject to one ground of demurrer interposed thereto. It contained the following averment: "Prior to the diversion of the surface rainwater, herein complained of, a large quantity of the rainwater falling upon the hills south of the coal chute and sandhouse as shown by said map naturally drained off the land in such manner and direction as not to injure orator's property; that in order to take

off all or a part of this water there was and is a large underground sewer, beginning at a point between defendant's sandhouse and coal chute and just south of the same, and running west under defendant's yard tracks and its main track, and under the track of the Louisville & Nashville Railroad Company. Orator avers that when this surface rainwater drained off naturally, or through said sewer, it did not affect or injure his property. Your orator further avers that the defendant has diverted the natural flow or drainage of this surface rainwater by the following scheme of drainage; that is, the underground sewer, above referred to, has been stopped up by the defendant, or defendant has *allowed the same to become stopped up by sand and dirt.*" It thus appears by this averment that, with the sewers open, plaintiff's land was not damaged or injured, but that it was injured in consequence of the sewer or drain becoming stopped up. It is also herein alleged, in the alternative, that the defendant either stopped up the sewer *or allowed it to be stopped up.* In order to render defendant liable for allowing the drain to become stopped up, some duty on its part must be shown to keep it open; and no such duty is shown. For aught that appears, this defendant may not have had the right, much less have been charged with the duty, to open the sewer or to prevent its being stopped up.

In order for alternative averments to be good, each alternative must show a right of action. A chain is no stronger than its weakest link. The demurrer took this point, and it should have been sustained.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, ANDERSON, and SAYRE, JJ., concur. McCLELLAN, and SOMERVILLE, JJ., concur in the conclusion only.