104 So.2d 827

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES

v.

Melvin DAWKINS et al.

3 Div. 821.

Supreme Court of Alabama.

Aug. 28, 1958.

14

16

John Patterson, Atty. Gen., and Gordon Madison, Asst. Atty. Gen., for appellees.

Goldberg, Feller & Bredhoff and Herbert S. Thatcher, Washington, D. C., and Cooper, Mitch & Black, Birmingham, for appellant.

SIMPSON, Justice.

This is an appeal from a ruling of the lower court sustaining the demurrer to a bill praying for declaratory judgment and injunction.

Appellant is an unincorporated association affiliated with the AFL-CIO, having its principal office in Washington, D. C. It is engaged in organizing and recruiting members among civilian public employees for the purpose of collective bargaining. Appellant's bill alleges that it derives all of its income from the dues paid by its members who are employed by governmental bodies or agencies. We will sometimes hereafter refer to appellant as the "Union". Appellees are incumbent members and officers of the Alabama Alcoholic Beverage Control Board, hereafter called the "Board". The suit is concerned with the constitutional validity of Act 720, H. 231, approved September 17, 1953, General Acts of Alabama, 1953, p. 974, which we will hereafter refer to as the "Solomon Bill". The text of the statute is set out in the earlier case of Government & Civic Employees Organizing Committee, C.I.O. v. Windsor, 262 Ala. 285, 78 So.2d 646. Briefly the overall effect of the statute is to take away from a State employee merit system privileges and benefits if such employee should become a member of a labor union.

That phase of the bill praying for a declaratory judgment seeks to have the statute declared unconstitutional as applied to the Union, because it violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution or, in the alternative, that in order to avoid a construction of the statute rendering it unconstitutional, it should be adjudicated that the statute has no application to the Union or its members, or that appellant is not a labor union or labor organization as defined in the statute. That feature of the bill praying for an injunction seeks to enjoin the appellees and their successors in office from enforcing or threatening to enforce the statute against the Union or any of its members.

Appellees' demurrer addressed to the bill as a whole contained the following pertinent grounds: There is no equity in the bill; it does not state a justiciable controversy; the matters alleged have already been litigated and decided contrary to the complainants, and, as amended, that the matters alleged in the bill as having occurred between the "Committee" and respondents' predecessors in office are not such matters as may be set up in the complaint as a basis for the relief prayed for.

It should be first noted that the applicability of the Solomon Bill to appellant and its members was litigated and decided in the Windsor case, supra. The effect of the ruling in that case was that the former Government and Civic Employees Organizing Committee (now merged into the appellant union) was a labor union within the terms of the Solomon Bill and was therefore subject to its provisions. The Committee's rules and regulations now govern the appellant, as appellant Union is substantially identical with the Committee in membership, objects and method of operation according to the averments of the bill.

On a careful consideration, we have concluded that the trial court ruled correctly in sustaining the demurrer. The bill lacked equity in failing to show a justicable controversy. Before discussing the several grounds of the demurrer, we will refer to the cases which seem to bear on the questions posed by the appeal. Equity will not entertain a suit merely to vindicate an abstract principle of justice or to determine a dispute which involves neither benefit to be gained nor injury suffered. Medical Society of Mobile County v. Walker, 245 Ala. 135, 16 So.2d 321; Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 77 So. 574; Foster v. Mansfield, C. & L. M. R. Co., 146 U.S. 88, 13 S.Ct. 28, 36 L.Ed. 899; Williams v. Hagood, 98 U.S. 72, 25 L.Ed. 51; 19

**18**

Am.Jur. 50, Equity, § 21; 30 C.J.S. Equity § 13, p. 333. To be entitled to claim equitable relief, the complainant must show a controversy which will cause actual harm to him. Futhermore, a court of chancery will not entertain a bill which seeks merely a declaration of future rights (Cross v. De Valle, 1 Wall. 5, 68 U.S. 5, 17 L.Ed. 515); nor will a possible future violation of law be restrained. United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; 19 Am.Jur. 51, Equity, § 21. An impending or threatened invasion of some legal right of the complainant, and some interest in preventing the wrong sought to be perpetrated must be shown. 28 Am.Jur. 218, 220–221, Injunctions, §§ 25 and 28. A court of equity has no power to enjoin unless the conditions sought to be restrained have already arisen and come into being, or, in other words, the abstract right must assume a concrete form before it becomes property which in the judicial sense, is capable of protection by injunction. But a concrete case is presented whenever a right of the plaintiff is threatened by the defendant and the damage would be irreparable. 28 Am.Jur. 219, Injunctions, § 26; 30 C.J.S. Equity § 13, p. 333. Equity jurisdiction is limited to such matters as are practical and call for present action in the premises, and on which the court may properly pronounce a present decree. United States v. Central Stockholders' Corp. of Vallejo, 9 Cir., 52 F.2d 322, at pages 338, 339. Equity will not act in anticipation of merely possible future controversies; plaintiff's right must have been actually involved. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, at pages 324, 325, 56 S.Ct. 466, at pages 472, 473, 80 L.Ed. 688. Or, if the relief sought is preventive, there must be a state of affairs which actually threatens such right and calls for present relief. The court will not undertake to determine academic, moot, or abstract questions, to declare future rights, to lay down rules for the future conduct of individuals, or simply to advise parties, where real interests and questions are not involved. A moot case or question is a case or question in or on which there is no real controversy; a case which seeks to determine an abstract question which does not rest on existing facts or rights, or involve conflicting rights so far as plaintiff is concerned. Postal Telegraph-Cable Co. v. City of Montgomery, 193 Ala. 234, 69 So. 428. The function or duty of a judicial tribunal is to determine real controversies relative to the legal rights of persons or property, which are actually involved in the particular case properly brought before it. Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293; Postal Telegraph-Cable Co. v. City of Montgomery, supra.

These general principles are particularly applicable to bills seeking declaratory relief. Curjel v. Ash, 263 Ala. 585, 83 So.2d 293; Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11; Gilmer v. Gilmer, 245 Ala. 450, 17 So.2d 529; Shadix v. City of Birmingham, 251 Ala. 610, 38 So.2d 851; Talton v. Dickinson, 261 Ala. 11, 72 So.2d 723; Saenger Theatres Corp. v. McDermott, 237 Ala. 489, 187 So. 460; Bagwell v. Woodward Iron Co., 236 Ala. 668, 184 So. 692.

 Against the background of the before-mentioned principles stating the necessity of a justiciable controversy, we must examine the appellant's bill with that strict construction required by our system of pleading. Many allegations in the bill which would tend to show a justiciable controversy and which state facts that would give rise to an inference of a bona fide contest are phrased as alternative averments with respect to parties respondent. For instance, parties respondent are referred to in the bill as "Respondents, or their predecessors in office", and "respondents' acts (or those of respondents' predecessors)". Since the averments of a bill on demurrer are to be construed most strongly against the complainant, alternative averments are insufficient, unless each alternative shows a good cause of action. Where one alternative is bad, the demurrer should be sustained generally to the bill as

a whole and not just to the alternative averment. Pleadings are no stronger than their weakest alternative, or to say it in other words, a chain is no stronger than its weakest link. Pickens County v. National Surety Co., 229 Ala. 191, 155 So. 620; Lacy v. Fowler, 206 Ala. 679, 91 So. 593; Cudd v. Wood, 205 Ala. 682, 89 So. 52; Union Cemetery Co. v. Jackson, 188 Ala. 599, 65 So. 986; Shannon v. Long, 180 Ala. 128, 60 So. 273; Atlantic Coast Line R. Co. v. Woolfolk, 178 Ala. 190, 59 So. 633.

Applying this rule to the alternative averments before us, it must be held that they fail to assert a justiciable controversy, as pointed out by the demurrer. A suit filed against the present respondents can gain nothing by allegations of acts or threats made by respondents' predecessors in office. Neither can this case be controlled by the Windsor case, supra, where the Court held that the bill there showed a justiciable controversy between the then complainant and respondents. The present litigation must be considered entirely separate from that case. That case was for a declaration upon different issues than the one before us now, and since that time complainant union has merged with the A. F. L. and the respondents in that case have retired from office by virtue of the expiration of their terms. We have before us now, therefore, a new cause of action, a new complainant by merger, and different parties respondent. The justiciable controversy found in the Windsor case was a controversy only between the parties in that cause in existence at the time it was submitted to this Court. This suit does not involve a substitution of successors as parties in order to continue the pendency of the same suit. Thus it is not within the rule of Giglio v. Barrett, 207 Ala. 278, 92 So. 668.

However, if this suit were to have been prosecuted against respondents' predecessors while the latter remained in office, the question of abatement of action would have been presented at the time respondents succeeded to the office, depending upon whether a continuing duty rested upon the members of the Board, irrespective of the incumbent, and the type of proceeding. Irwin v. Wright, 258 U.S. 219, 42 S.Ct. 293, 66 L.Ed. 573; Murphy v. Utter, 186 U.S. 95, 22 S.Ct. 776, 46 L.Ed. 1070; Thompson v. United States, 103 U.S. 480, 26 L.Ed. 521; Northwestern Lumber & Shingle Co. v. United States, 10 Cir., 170 F.2d 692. This question is moot and we express no opinion thereon. Here no question of abatement exists. The immediate question confronting us now is whether the acts of respondents' predecessors can be imputed to respondents in such a way that without any further affirmative act or threat by the incumbents, a situation fraught with controversy still exists. The only way in which an affirmative answer may be had is to hold that the actions of the former board members constituted official acts of the State so that the continuity of the State as a sovereignty has preserved the controversial nature of the predecessors' acts. This position is untenable. Our answer to this inquiry is negative. Such action by respondents' predecessors were personal, not State action, and, as such, could afford no foundation for a suit against the Board as an agency of the State. Mr. Justice Peckham, in speaking for the United States Supreme Court in Ex parte Young, 209 U.S. 123, at page 159, 28 S.Ct. 441, at page 454, 52 L.Ed. 714, said:

"The answer to all this is the same as made in every case where an official claims to be acting under the authority of the state. The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state to enforce a legislative enactment which is void because unconstitutional. If the act which the

state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."

The principle thus stated has since been applied in numerous decisions by the United States Supreme Court. Ex parte La Prade, 289 U.S. 444, 53 S.Ct. 682, 77 L.Ed. 1311; Hopkins v. Clemson Agricultural College, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131; Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375. Ex parte La Prade, supra, held that a public officer cannot be substituted in a suit against his predecessor so as to be liable for acts of his predecessor which are alleged to be outside the scope of his office, such as the enforcement of an unconstitutional statute, where it is not shown that the successor continues or threatens to continue such actions. The United States Supreme Court again reiterated the principle in United States ex rel. Bernardin v. Butterworth, 169 U.S. 600, 18 S.Ct. 441, 442, 42 L.Ed. 873, where it is said:

"In Thompson v. United States, 103 U.S. 480 [26 L.Ed. 521], the distinction is pointed out between proceedings where the obligation sought to be enforced devolves upon a corporation or continuing body, and those where the duty is personal with the officer. In the former case there is no abatement. The duty is perpetual upon the corporation; in the latter, the delinquency charged is personal, and *involves no charge against the government, against which a proceeding would not lie.* * * *

"In the absence, therefore, of statutory authority, we cannot, after a cause of this character has abated, bring a new party into the case. Nor is the want of such authority supplied by the consent of a person not a party in the cause." (Emphasis supplied.)

Although Ex parte La Prade and United States ex rel. Bernardin v. Butterworth dealt with the matter of substitution of parties, the application of the principle discussed therein should apply, *a fortiori,* to cases of newly instituted suits.

■ If it were permitted us to look beyond the alternative averments to those allegations referring only to respondents, the bill still fails to state a bona fide controversy. Some of these allegations charge no conduct to the respondents for which an inference of controversy arises. The bill alleges that respondents have in no way repudiated the official action taken by their predecessors in office, but this allegation is insufficient to establish any act or threats made by the present respondents necessary to create a litigable situation. The mere statement in the bill that a justiciable controversy exists between complainant and respondents is also inefficacious. It is not sufficient to plead by way of conclusion that there is an existing controversy of a justiciable character between the parties. Facts must be pleaded out of which the controversy arises. Shadix v. City of Birmingham, supra; American Bakeries Co. v. City of Huntsville, 232 Ala. 612, 168 So. 880. The bill of complaint does allege: "Substantial civil and property rights are dependent upon the determination of this controversy and the actions of respondents in insisting that said Statute may be applied to complainant and its members and in threatening to enforce, and in enforcing said Statute, against complainant and its members, have rendered a declaratory judgment of this Court necessary to protect such rights of complainant and its members". But this allegation is also inadequate in that it is conclusionary, fails to state distinct facts in support of the averment regarding respondents' actions", requires inference or reference to other

parts of the bill, and is loosely and indeterminately expressed. Cullman Property Co. v. H. H. Hitt Lumber Co., supra. Viewing the bill overall, it apparently attempts to seek relief based upon facts which occurred between the Government and Civic Employees Organizing Committee and the former members and administrator of the Alabama Alcoholic Beverage Control Board. For the reasons outlined above, such relief cannot be granted on this basis.

■ Paragraph 13 of the bill alleges as follows: "Complainant is reliably informed that (1) many employees of the Board presently desire to become members of and to participate in complainant, but fear that Respondents will apply the Statute to them with consequent loss of employment, prevents their so doing; (2) Respondents continue to insist that such application can be constitutionally given the Statute and, furthermore, will be given". This allegation upon information and belief is bad in that it does not follow the proper form for that type of allegation. Cullman Property Co. v. H. H. Hitt Lumber Co., supra. See also Hornaday v. First Nat. Bank of Birmingham, 259 Ala. 26, 65 So.2d 678. The above allegation does not fall within the distinction drawn in Shanks v. Winkler, 210 Ala. 101, 97 So. 142.

■ Without specifying the facts amounting to a controversy, this Court cannot proceed to declare a justiciable controversy upon a bare showing in a complaint of mere apprehension, anticipation, or fear of unauthorized, illegal, or unconstitutional acts by public officers to be committed in future. O'Rear v. Sartain, 193 Ala. 275, 69 So. 554; Alston v. Dunn, 176 Ala. 421, 58 So. 300; Goodson v. Dean, 173 Ala. 301, 55 So. 1010.

Having determined that the bill of complaint fails to state a justiciable controversy, we do not reach the issues to which the cases cited by the Union (Columbia Broadcasting System, Inc., v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563, and Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817) would be applicable. In those cases justiciable controversies existed. Here we have no satisfactory allegation as to a single positive act of the respondents indicative of their intention to enforce the Solomon Act. So far as appears no member or former member of the Union has been discharged by the respondents. The strongest allegation in the bill is that the respondents have not repudiated the statement of their predecessors, but this is not enough. For aught that appears, respondents will never interfere with Union membership.

■ We would like to point out for future guidance a few discrepancies noted with reference to the preparation of the transcript. Supreme Court Rule 27, Code 1940, Tit. 7 Appendix, was violated in that the ends of the cord with which the transcript were bound were not fastened down by the clerk's seal. The purpose of this rule is to prevent tampering with or mutilation of the transcript. 261 Ala. XIX, Rule 27. See Glenn v. Pruet, 17 Ala.App. 108, 82 So. 556. Rule 24 states that the style of the case at the head of the pleadings shall not be copied into the transcript and that in copying the pleadings into the transcript the clerk shall center the names of each pleading on the page just above the pleading. In these two respects Rule 24 was not followed on this appeal. These errors are not of the type which this Court will notice ex mero motu to the end that an appeal will meet a technical dismissal. But an accumulation of such defects may present another question. See Hudgins v. Pickens County, 9 Ala.App. 228, 62 So. 995.

Perhaps we have written too much. We think we have. But in view of the somewhat critical argument of appellant's counsel that they seem not able to get to a decision of the real issues in the case, we have been prompted to thus elaborate. We cannot hurdle or make ship-

wreck of well-known rules of procedure in order to accommodate a single case.

Affirmed.

LAWSON, GOODWYN, and COLEMAN, JJ., concur.