James M. Patton appeals from the judgment of the Circuit Court of Jefferson County in favor of Joseph Terry Estes and Cumberland Lake Country Club, Inc.[1] ("Cumberland Lake"), on their claims seeking a judgment declaring (1) that the issuance of 500 shares of stock in Cumberland Golf Country Club ("Cumberland Golf") to Patton and to Frank W. Kelley were not properly issued and are void as a matter of law; and (2) that the only true members of Cumberland Lake are those who have paid all assessments and fees assessed by Cumberland Lake. We affirm. *Page 378 
This litigation was originally brought as two separate civil actions, Case No. CV-89-6187 and Case No. CV-91-9481. However, the trial court consolidated these cases on March 13, 1992; the parties have submitted substantially identical pleadings and filings in the two actions since 1993, and the trial court entered the same judgment in both cases.[2] The original complaint in CV-89-6187 sought a judgment declaring the rights, duties, and obligations of Estes and Cumberland Golf in a pier and a stone patio extending from Estes's property into Cumberland Lake. This complaint was amended to allege breach of contract on the part of Cumberland Golf. Thereafter, Estes and Cumberland Lake filed CV91-9481 against Cumberland Golf, Jay R. Kelley, and Ronnie L. Grant, seeking injunctive relief to permit Estes and other Cumberland Lake members the right to use Cumberland Golf's property in accordance with a condition contained in a deed from Cumberland Lake to Cumberland Golf. An amendment to this second complaint sought (1) declaratory relief as to various alleged breaches of the Cumberland Lake/Cumberland Golf deed and a related real estate sales and personal property contract; (2) rescission of the deed and the contract; (3) injunctive and restitutional relief for alleged interference with Cumberland Lake's membership's use of the property conveyed by the deed; and (4) compensatory damages for alleged breaches of the deed and the contract. After the original defendants answered and counterclaimed,[3] the trial court consolidated the two actions as described above and granted the motion of Patton and four other individuals, including Frank W. Kelley, to intervene as defendants and counterclaimants.
On February 1, 1993, Estes and Cumberland Lake submitted a verified filing styled "Application for Temporary Restraining Order," which alleged that Cumberland Golf and the intervenors were engaging in takeover efforts directed toward Cumberland Lake and that Estes and Cumberland Lake would suffer immediate and irreparable injury if the activities alleged were not immediately enjoined. The application requested the trial court to enjoin the defendants and intervenors "from conducting any business under the name of Cumberland Lake Country Club, Inc. and from holding themselves out to be the officers and/or directors of Cumberland Lake Country Club, Inc." Notably, although this filing is designated an application for a temporary restraining order, it contains an incorporated "notice of hearing" to be held on February 4, 1993, and a certificate of service upon all counsel by mail and facsimile.
The trial court thereafter received testimonial and documentary evidence from the parties on the application for injunctive relief. On March 1, 1993, it issued an order enjoining Patton from holding himself out to be a member of Cumberland Lake's board of directors and from conducting business on behalf of Cumberland Lake. The order also contains the following pertinent provision (emphasis added):
 "The defendants Cumberland Golf Country Club, Inc., Jay R. Kelley and Ronnie Grant are hereby enjoined from conducting any business or entering into any agreements which affect or could affect the rights or liabilities of Cumberland Lake Country Club, Inc . . . . with the following named individuals, to-wit: James M. Patton. . . ."
This order was expressly stated to be in effect "[u]ntil a final order is entered in this matter on the issues contained in the . . . Application for Temporary Restraining Order."
On August 13, 1993, Cumberland Lake, which had by then purchased all 500 outstanding shares of stock in Cumberland Golf, filed a petition, accompanied by documentary evidence, for appointment of a receiver for Cumberland Golf, citing its concern that the *Page 379 
officers and directors of Cumberland Golf would "divert and misappropriate property and/or assets of the corporation for their own personal use and profit." The trial court issued an order on August 17, 1993, setting the petition for hearing on August 23, 1993, and enjoining Cumberland Golf "from disposing of any asset of Cumberland Golf Country Club, Inc. other than in the ordinary course of business."
On August 19, 1993, two days after the entry of the trial court's injunction against the transfer of assets, Cumberland Golf's board of directors directed the issuance of 500 authorized but previously unissued shares of stock;[4] 250 of these shares were sold to Patton for $50,000, and the remaining 250 shares were sold to Frank W. Kelley, Jay R. Kelley's brother.
While the petition for appointment of a receiver for Cumberland Golf was being heard by the trial court, Cumberland Golf filed for bankruptcy protection and simultaneously suggested its bankruptcy in the trial court. This filing stayed all proceedings in the two cases, and the cases were ultimately removed to a federal bankruptcy court because of the presence of bankruptcy issues. In the bankruptcy court, Cumberland Lake successfully sought abstention from and remand of the two cases. The bankruptcy court's order remanding the cases was appealed to the federal district court, which affirmed the bankruptcy court's order, and the cases ultimately were returned to the trial court for adjudication.[5]
Upon remand, Cumberland Lake and Estes amended their complaint to request further declaratory relief based upon alleged events occurring since 1993. Specifically, Estes and Cumberland Lake sought (1) a declaration that Cumberland Lake is the lawful owner of the 500 issued and outstanding shares of Cumberland Golf stock (Count Eight); (2) a declaration that the 500 shares of stock issued to Patton and Frank W. Kelley were not properly issued because of the trial court's injunctions of March 1, 1993, and August 17, 1993, and are therefore void (Count Nine); (3) a declaration that certain Cumberland Golf promissory notes and mortgage obligations are invalid (Counts Ten and Twelve); and (4) a declaration that "the true members of [Cumberland] Lake are those who have paid all assessments and fees assessed by [Cumberland] Lake" (Count Eleven). Cumberland Lake and Estes then filed a motion for summary judgment on Counts Eight, Nine, and Eleven. Jay R. Kelley and Patton subsequently filed responses in opposition to the summary judgment motion, essentially conceding that Cumberland Golf had issued the 500 shares to Patton and Frank W. Kelley on August 19, 1993, but denying that their issuance contravened any of the trial court's orders.
The trial court granted Cumberland Lake and Estes's motion for summary judgment, and declared that (1) "the issuance by [Cumberland] Golf of 500 shares of its common stock to James Patton and Frank Kelley is void and to be held for naught"; and (2) "the only persons who are members of [Cumberland] Lake at this time are those who have been approved by [its] Board of Directors and have paid all assessments imposed by [Cumberland] Lake."[6] The trial court certified the judgment as final under Rule 54(b), Ala.R.Civ.P., based upon the effect of various bankruptcy filings upon the remaining claims of the parties. Patton filed a notice of appeal to the Alabama Supreme Court in both CV-89-6187 and CV-91-9481; both of these appeals were transferred to this court pursuant to § 12-2-7(6), Ala. Code 1975. Because the two appeals involve the same issues, we consider them together. Cf. Ala.R.App.P. 3(b). *Page 380 
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. JeffersonCounty, 623 So.2d 1130, 1132 (Ala. 1993). We note that Rule 56 is to be read in conjunction with the "substantial evidence rule" (§ 12-21-12, Ala. Code 1975). Hurst v. Alabama Power Co.,675 So.2d 397, 398 (Ala. 1996). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Id. That said, however, we further note that this court reviews judgments and not opinions, and we will affirm a correct judgment on any valid basis, regardless of whether it was accepted or even considered by the trial court. Aldridge v. Valley Steel Constr.Inc., 603 So.2d 981, 983 n. 1 (Ala. 1992) (appellee "may offer in support of its judgment any argument supported by the record, whether that argument was ignored by the circuit court or rejected").
 I. The August 19, 1993, Cumberland Golf Stock Issue
Patton contends on appeal that the trial court erred in invalidating Cumberland Golf's issuance to him of 250 shares of authorized but previously unissued stock. He disagrees with the trial court's conclusion that Cumberland Golf violated the court's March 1, 1993, and August 17, 1993, injunctions by issuing the stock, arguing that (1) the March 1, 1993, injunction was a temporary restraining order that could not extend for more than 10 days without the consent of the parties restrained; and (2) the August 17, 1993, injunction was not violated because the stock transfer was not the transfer of an "asset" of Cumberland Golf, and was in any event "in the ordinary course of business." However, the applicability of the March 1, 1993, injunction is dispositive, and, because this ground alone would support this portion of the trial court's judgment, we do not reach the issue whether the sale of the Cumberland Golf stock two days after the August 17, 1993, injunction was a violation thereof.
Patton argues that because the March 1, 1993, order was issued in response to a request for a temporary restraining order, it is necessarily limited in duration to 10 days and could not have had any effect beyond the 10th day after its issuance. This argument calls into question the trial court's construction of one of its own orders. "A trial court possesses an inherent power over its own judgments that enables it to interpret, implement, or enforce those judgments." Grayson v. Grayson, 628 So.2d 918, 919
(Ala.Civ.App. 1993). Moreover, "[i]f there is uncertainty in a judgment the court must construe it so as to express the intent of the trial judge, which intent can be derived from the provisions of the judgment." Erbe v. Eady, 406 So.2d 936, 938
(Ala.Civ.App.), cert. denied, 406 So.2d 939 (Ala. 1981), cert. denied,456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982).
Our review of the record in this case and of Rule 65, Ala.R.Civ.P., leads us to the conclusion that the trial court properly interpreted its own injunctive order. Rule 65(b) reads in pertinent part as follows (emphasis added):
 "A temporary restraining order may be granted without written or oral notice to the adverse party
or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. Every temporary restraining order granted without notice
shall be endorsed with the date and hour of issuance; shall be *Page 381 
filed forthwith in the clerk's office and entered of record, and shall expire by its terms within such time after entry not to exceed ten (10) days, as the court fixes (except in domestic relations cases, the ten(10-) day limitation shall not apply), unless within the time so fixed the order for good cause shown is extended or unless the party against whom the order is directed consents that it may be extended for a longer period."
Rule 65(b) thus allows for an emergency form of injunctive relief to be issued against an adversary without prior notice in certain instances, limited to 10 days' duration. The rule by its terms does not limit the duration of injunctive relief issued after notice and a hearing, regardless of whether the petition is labeled as seeking a "temporary restraining order" or a "preliminary injunction."
Estes and Cumberland Lake served and filed their "Application for Temporary Restraining Order," i.e., their initial request for injunctive relief, on February 1, 1993, and provided notice to all parties, by facsimile and United States mail, that a hearing on the request would be held on February 4, 1993. The trial court conducted a hearing at which it received evidence directed to the propriety of injunctive relief, and it issued an order on March 1, 1993, enjoining Cumberland Golf from conducting any business or entering into any agreements with Patton potentially affecting the rights or liabilities of Cumberland Lake until a "final order" could be entered. The trial court's injunction, issued after notice and a hearing were provided to all interested parties, exhibits none of the earmarks of a temporary restraining order: it is not endorsed with "the date and hour of issuance" and contains no limits to its duration. Under these circumstances, we conclude that Rule 65(b)'s 10-day limitation on temporary restraining orders issued without notice does not apply to the March 1, 1993, injunction, and that the trial court possessed the power to enter a preliminary injunction extending beyond that period.
Accordingly, the trial court did not err in construing its order enjoining Cumberland Golf from entering into any agreements or conducting business with Patton to extend beyond the 10 days authorized for a temporary restraining order issued without notice under Rule 65(b). We note that Patton has not challenged the trial court's conclusion that the sale of the previously unissued stock potentially affected the rights or liabilities of Cumberland Lake and that the sale therefore constituted a violation of the injunction. Nevertheless, that conclusion is sound: as a result of Cumberland Golf's issuance and sale of new stock to Patton, Cumberland Lake was deprived of any claim to controlling ownership interest in Cumberland Golf within days after having acquired all previously outstanding shares of Cumberland Golf. We therefore affirm the trial court's judgment on Count Nine.
 II. Patton and the Cumberland Lake Litigation Assessment
In Count Eleven, Cumberland Lake sought a declaration that only persons approved by Cumberland Lake's board of directors "and [who] have paid all assessments imposed by [Cumberland] Lake" are members of Cumberland Lake. In November or December 1991, Cumberland Lake's board of directors unanimously voted to commence CV-91-9481 and to assess each of its members $100 (payable in two installments of $50) for the purpose of funding Cumberland Lake's participation in CV-91-9481. Cumberland Lake's secretary sent two letters in December 1991 and January 1992 advising Cumberland Lake members of the duty to pay the first installment of the assessment by February 1, 1992, and the remainder by March 1, 1992. It is undisputed that Patton, while a member of Cumberland Lake at the time, did not pay or attempt to pay any portion of this assessment until November 1992, at which time his tender of payment was rejected because his membership had, under Cumberland Lake's bylaws, been forfeited.
Patton contends (1) that Cumberland Lake had no authority to assess him, either because it had previously contracted away control over its membership to Cumberland Golf or because litigation is not a proper reason for assessment of Cumberland Lake members, and (2) that he properly tendered payment *Page 382 
of the assessment amount to Cumberland Lake. We address these issues in turn.
Cumberland Lake's bylaws, submitted in support of the motion for summary judgment, reveal that the directors of Cumberland Lake "have the authority to make special assessments for any purpose in connection with providing, operation [sic] and maintaining the facilities of the club." While the term "the club" in this broad formula is not defined, it necessarily denotes the Cumberland Lake Country Club,[7]
identified in the bylaws as a nonprofit corporation
 "organized for the purpose of promoting social intercourse among and to furnish pleasure, happiness and health to its members, and to acquire real and personal property, and to do such other things as may be necessary and proper for the carrying out and accomplishment of such objects and purposes as are deemed necessary by the Board of Directors."
While Patton contends that Addendum # 1 to the 1982 Real Estate and Personal Property Sales Contract between Cumberland Lake and Cumberland Golf indicates that Cumberland Lake "contracted away" its right to determine its own membership, there is nothing in Addendum # 1 that would compel such a conclusion. Addendum # 1 merely states that Cumberland Golf has the final decisionmaking power regarding admission of members in "the Club,"[8] which is a body distinct from Cumberland Lake. Moreover, even if one were to assume that Cumberland Lake and "the Club" were the same entity, the mere delegation of power over admission is not tantamount to complete authority to determine whether a member in Cumberland Lake should remain a member in spite of failure to meet his or her obligations under the Cumberland Lake bylaws. Thus, the contractual power of Cumberland Golf to admit members to "the Club" does not foreclose the power of Cumberland Lake to terminate its own members for cause.
We also reject Patton's argument that the $100 assessment was levied for an improper purpose and is void. Under Addendum # 1 to the 1982 Real Estate and Personal Property Sales Contract between Cumberland Lake and Cumberland Golf, Cumberland Golf is to operate its golf and country club business on the land transferred from Cumberland Lake "for the benefit of the members of Cumberland Lake." The declaratory judgment action as originally filed by Cumberland Lake and Estes against Cumberland Golf, Jay R. Kelley, and Ronnie L. Grant seeks redress for the suspension of the membership privileges of a Cumberland Lake member and the perceived threat to the membership privileges of other Cumberland Lake members, and alleges among other things that the suspension is a breach of the parties' contract. These matters relate directly to the operation of the country club facilities and are well within the realm of "providing, operating and maintaining" the facilities of Cumberland Lake as an entity devoted to the pleasure and happiness of its members. The action and the assessment were specifically authorized and mandated by the Cumberland Lake board of directors, which implicitly found the institution of litigation to protect Estes's rights to be a necessary object or purpose of Cumberland Lake after the transfer of its real property to Cumberland Golf. We thus reject Patton's contention that Cumberland Lake could not assess its members for the cost of litigation with Cumberland Golf.
Finally, we find no error in the trial court's rejection of Patton's claim that he properly tendered the assessment. Cumberland Lake's bylaws classify assessments as regular indebtedness to the club and state that its members automatically become "inactive" members if they fail to pay all dues and indebtedness to Cumberland Lake within 25 *Page 383 
days of billing. The bylaws further provide that an inactive member must pay into the club all overdue amounts within 60 days of the beginning of inactive status or else the membership will be considered forfeited. Based upon these facts, we agree with the trial court that only persons who have paid all assessments imposed by Cumberland Lake, including the litigation assessment of $100, are members of that body.
The trial court correctly entered the summary judgment in favor of Cumberland Lake and Estes on Counts Nine and Eleven of their complaint; consequently, the judgment of the trial court is due to be affirmed.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] This party is called "Cumberland Lake Country Club, Inc." in various pleadings and filings in the trial court; however, we refer to this party as it was designated in the original complaint.
[2] No party has raised the potential applicability of § 6-5-440, Ala. Code 1975, which forbids the prosecution of "two actions in the courts of this state for the same cause and against the same party," and we therefore do not address its effect in this case.
[3] The counterclaims were not adjudicated by the trial court, and are not at issue on this appeal.
[4] Although Cumberland Lake had acquired all 500 shares of stock then outstanding, Cumberland Golf's 1982 articles of incorporation authorized the issuance of 1,000 shares of stock overall.
[5] There is no indication that the bankruptcy court or the district court entered any orders altering or vacating the two injunction orders issued by the trial court.
[6] Frank W. Kelley filed for bankruptcy protection several weeks before this judgment was entered, and the trial court noted that its jurisdiction over claims brought by or against Frank W. Kelley "is therefore now uncertain." We express no opinion on this appeal concerning this jurisdictional issue, as Frank W. Kelley is not a party to this appeal.
[7] This is a distinct and separate entity from "the Club" (capitalized), the for-profit business of Cumberland Golf of operating a golf and country club on Cumberland Lake's premises, as defined in Addendum # 1 to the 1982 Real Estate and Personal Property Sales Contract between Cumberland Lake and Cumberland Golf.
[8] See note 7, regarding the distinction between "the club" in the Cumberland Lake bylaws and "the Club" in Addendum # 1.