PER CURIAM.
This appeal arises from a judgment entered by the Jefferson Probate Court denying a petition in which J.L.P. (“the stepfather”), the husband of J.S.P. (“the mother”), sought to adopt the mother’s minor child, A.I.S. (“the child”). Because the biological father of the child, L.A.M. (“the father”), has not given consent to the adoption, as is required under Alabama law, we affirm the probate court’s judgment.
Alabama Code 1975, § 26-10A-5(a), a portion of Alabama’s Adoption Code, provides that any adult may petition to adopt a minor. The Adoption Code sets forth a prima facie requirement that consent to the proposed adoption must be obtained from the mother of the adoptee and, in certain instances, from the “presumed father” or from the “putative father” of the adoptee.[1] See Ala.Code 1975, § 26-10A-7(a)(2), (a)(3), and (a)(5). The terms “presumed father” and “putative father” mean different things under the Adoption Code: a “presumed father” is “[a]ny male person as defined in the Alabama Uniform Parentage Act,” i.e., Ala.Code 1975, § 26-17-1 et seq. (“the AUPA”), whereas a “putative father” is “[t]he alleged or reputed father.” Compare Ala.Code 1975, § 26-10A-2(ll), with Ala.Code 1975, § 26-10A-2(12). There is a further significant difference between the two classifications. Under the Adoption Code, a “presumed father” of a child who has never married or attempted to marry that child’s mother is afforded an unqualified right to object to a proposed adoption of that child, regardless of the child’s actual paternity, if “[h]e received the adoptee into his home and openly held out the adoptee as his own child.” Ala.Code 1975, § 26-10A-7(a)(3)d.
'In contrast, a “putative father” who is made known to the court considering the adoption is merely given the right to object to an adoption “provided he complies with Section 26-10C-1,” i.e., the statute governing the putative-father registry. Ala.Code 1975, § 26-10A-7(a)(5). That language reflects that, since 2002, a required consent is deemed given by implication by a failure to comply with Ala.Code 1975, § 26-10C-1, a portion of the Alabama Putative Father Registry Act (“the Act”) as codified; such consent so implied “may not be withdrawn by any person.” Ala.Code 1975, § 26-10A-9(a)(5) and (b). In turn, § 26-10C-l(a) provides for a central putative-father registry in which are to be recorded the names of, and other information concerning, any person filing a notice of intent to claim paternity of a child. The penalty for failing to file such a notice of intent is, under the Act, severe:
“Any person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity pursuant to [§ 26-10C-l(a) ] prior to or within 30 days of the birth of a child born out of wedlock[] shall be deemed to have given an irrevocable implied consent in any adoption proceeding.
“This subsection shall be the exclusive procedure available for any person who claims to be the natural father of a child born out of wedlock on or after January 1, 1997, to entitle that person to notice of and the opportunity to contest any adoption proceeding filed and pending on or after January 1,1997.”
Ala.Code 1975, § 26-10C-l(i).
The child who is the subject of these proceedings was born in October 2003. *772 The father brought an action pursuant to the AUPA seeking an adjudication of his paternity in November 2003. There is no indication in the record that the father filed with the putative father registry a notice of his intent to claim paternity. The Jefferson Family Court entered an order in June 2004 determining the father’s paternity of the child based upon stipulated genetic-testing evidence but reserving the issue of child support; the father was ultimately directed, in the family court’s final judgment, to pay $205 in monthly child support to the mother, who was awarded custody of the child subject to the father’s rights to visitation. The judgment was subsequently modified on several occasions to address support and visitation matters.
In February 2007, the stepfather (who had married the mother in December 2003) filed a petition in the Jefferson Probate Court seeking to adopt the child; the father was listed as having been adjudicated to be the biological father of the child, although the petition further alleged that no party had indicated an intent to claim paternity within 30 days of the child’s birth pursuant to § 26-10C-1. The mother filed a document in the probate court expressly consenting to the child’s adoption by the stepfather. The stepfather then filed a motion in the probate court urging that court to determine whether the father had given consent to the proposed adoption based upon the authority of § 26 — 10C—1 (i); the motion noted that the child had been born out of wedlock, averred that the mother and the father had never been married or held themselves out as married to each other, and contended that the father had impliedly given his consent to the adoption. The father then apparently filed a document contesting the stepfather’s petition, although a copy of that document does not appear in the record. Copies of documents from the paternity action were thereafter filed in the probate court, and the petition for adoption was heard and taken under advisement by the probate court in December 2007.
On February 29, 2008, the probate court entered a judgment denying the stepfather’s adoption petition and sustaining the father’s contest of the proposed adoption. After summarizing the facts, and after noting the text of § 26 — 10C—l(i), the probate court purported to carve out an equitable exception to the provisions of the Adoption Code and the Act discussed herein, suggesting that
“it is not the intent of [§ 26-10C-1] to be so rigid and so unfair, one-sided and unjust to allow the [stepfather] and ... mother to accept child support for over three years, to have multiple hearings in Family Court over a three year period of time and then decide to file a Petition For Adoption and rely on the Putative Father Registry.”
The stepfather appeals from that judgment, contending that the probate court erred in determining that the doctrines of estoppel and/or laches barred him from relying upon the terms of the Act in the adoption proceeding. We need not reach that question, nor the constitutional arguments asserted by the father in his pro se appellee’s brief, because our review of the Adoption Code and the AUPA indicates that the probate court correctly ruled that the father’s consent was necessary. See Patton v. Cumberland Lake Country Club, Inc., 703 So.2d 376, 380 (Ala.Civ.App.1997) (“[T]his court reviews judgments and not opinions, and we will affirm a correct judgment on any valid basis, regardless of whether it was accepted or even considered by the trial court.”).
As we have noted, the Adoption Code provides that the consent of a “presumed father” of a child, i.e., any male person as defined in the AUPA, is necessary in a proceeding to adopt that child if the pre *773 sumed father has “received the adoptee into his home and openly held out the adoptee as his own child.” Here, the father has not only prosecuted a paternity action under the AUPA to a final judgment that has declared him to be the father of the child at issue,[2] but he has also been awarded and has exercised visitation rights at his home and at the home of his parents and has paid child support to the mother under the auspices of that paternity judgment and subsequent modifications thereto. In addition, the Adoption Code provides that the necessity of the consent of a “presumed father,” in contrast to that of a “putative father” who merely alleges or is reputed to be the father of the proposed adoptee, is not conditioned upon compliance with the Act. Thus, by its terms, the Adoption Code plainly requires that the father consent to the adoption of the child at issue in this case, which consent has not been given, and that requirement is not obviated by the father’s having neglected or refused to file a notice on his own behalf[3] with the putative-father registry.
The judgment of the Jefferson Probate Court denying the stepfather’s petition to adopt the child was correctly entered. That judgment is affirmed.
AFFIRMED.
PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in part and concurs in the result, with writing.
THOMPSON, P. J., concurs in the result, without writing.
BRYAN, J., concurs in the result, with writing.

. Notably, although the Adoption Code defines the term "father,” see Ala.Code 1975, § 26-10A-2(5), it does not explicitly require consent of a “father” to a proposed adoption except insofar as a "father” is the "presumed father” or the "putative father” of the child to be adopted. See Ala.Code 1975, § 26-iOA-7(a).

. See Ala.Code 1975, § 26-17-14(a) ("The order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes.”).

. Section 26-10C-l(a)(l) provides that the putative father registry shall contain information concerning "[a]ny person adjudicated by a court of this state to be the father of a child born out of wedlock,” a class that would certainly include the father as of June 2004.