SHAW, JUSTICE.
The defendants below, the Alabama Secretary of State, John Merrill, and a member of his staff, Ed Packard, the director of elections, petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate a preliminary injunction and to dismiss for lack of jurisdiction the underlying action seeking injunctive and declaratory relief. We grant the petition and issue the writ.
Facts
On December 7, 2017, Pamela Miles, Dan Dannemueller, Paul Hard, and Victoria Tuggle (hereinafter referred to collectively as "the plaintiffs") filed a civil action in the trial court against Merrill, in his capacity as Secretary of State, and Packard, in his capacity as director of elections (hereinafter referred to collectively as "the defendants"), seeking injunctive and declaratory relief. Specifically, they alleged that certain electronic voting machines used in Alabama elections created digital images of the paper ballots scanned and counted by the machines. Further, according to the plaintiffs, the defendants "do not and will not instruct election officials" to preserve the digital ballot images. Those images, it was argued, are public records that, under Alabama law, must be preserved. The plaintiffs also appeared to allege that federal law, specifically, 52 U.S.C. § 20701, requires that those images be retained. This failure "to require that all election materials" be preserved, the plaintiffs contended, "infringe[d] upon their right to a fair and accurate election." The plaintiffs specifically cited the then upcoming December 12, 2017, special election for United States Senate and argued that the failure to preserve digital ballot images in that election "used for tabulating votes and possible post-election adjudication" would result in such images being "destroyed." The plaintiffs further contended that their action "continues to be ripe through all elections scheduled in 2018."
The plaintiffs sought a temporary restraining order directing the defendants to "inform county election directors to preserve digital ballot images or files" in the December 12 election, requested that a hearing be held and a preliminary injunction be issued, and asked that, upon a final hearing, the trial court render a judgment declaring that the defendants had "a duty to preserve and instruct Alabama county election officials to preserve all digital ballot images and files produced in the State of Alabama." From the materials before us, it does not appear that the complaint was verified or that it included any supporting affidavits or evidence.
The trial court scheduled a hearing for Monday, December 11, 2017, at 9 a.m. Counsel for the plaintiffs and the defendants appeared at the hearing. It does not appear from the materials before us that any evidence was submitted or testimony taken at the hearing.
After the hearing, the defendants filed a motion to dismiss. That motion was *859 stamped as electronically filed at 12:47 p.m. on December 11. In the motion, the defendants argued, among other things, that the plaintiffs had no standing, that the action was filed too late to impact the December 12 special election, and that the plaintiffs could not meet their burden of establishing that they were entitled to injunctive relief. Specifically, the defendants argued that the plaintiffs did not allege how the failure to preserve digital ballot images would deny them the right to a fair and accurate election and that it was speculation that an election contest might occur where such images would be needed, especially given that the actual paper ballots, which would be the "best evidence," would be retained. They further alleged that no injury was fairly traceable to them because local election officials, not the Secretary of State, have authority over voting machines; the Secretary of State, they assert, is empowered by law only to give "uniform guidance" to those officials and could not order those officials to take the actions the plaintiffs requested. Additionally, any order mandating that officials retain digital ballot images would require "reprogramming" the electronic voting machines, which would risk interfering with the election that was to occur the next day. It does not appear that the trial court ruled on the motion to dismiss; instead, the motion was set for a hearing on December 21.
Subsequently, in an order stamped as electronically filed at 1:32 p.m. on December 11, the trial court entered a preliminary injunction. It directed the defendants to communicate with and to send to all probate judges and election officials in the state the following order:
"All counties employing digital ballot scanners in the Dec. 12, 2017 election are hereby ORDERED to set their voting machines to save ALL PROCESSED IMAGES in order to preserve all digital ballot images. This order applies to those machines that have such a setting and does not apply to any machine that does not allow for processed images to be saved."[1]
The trial court's order further set the matter for a "full hearing" on December 21.
At 3:53 p.m. on December 11, the defendants filed in this Court what was styled as a "petition for an emergency writ of mandamus." Within an hour, the defendants filed two "corrected" versions of the petition and a motion to stay the preliminary injunction; the defendants contended in their motion to stay that the preliminary injunction, if not stayed, would "cause confusion among elections officials and be disruptive to an election scheduled for tomorrow." This Court granted the motion to stay and ordered answers and briefs.
Discussion
A. The defendants' challenge to the preliminary injunction
In their petition, the defendants contend that the plaintiffs failed to demonstrate that a preliminary injunction[2] was warranted.[3]
*860 " 'In order for a trial court to grant a preliminary injunction, the plaintiff must show all of the following: (1) that without the injunction the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff.' "
Stephens v. Colley, 160 So.3d 278, 282 (Ala. 2014) (quoting Perley ex rel. Tapscan, Inc. v. Tapscan, Inc., 646 So.2d 585, 587 (Ala. 1994) ). Plaintiffs seeking a preliminary injunction must present evidence to substantiate their pleadings. Blount Recycling, LLC v. City of Cullman, 884 So.2d 850, 855 (Ala. 2003) ("[W]hile Rule 65, Ala. R. Civ. P., 'does not explicitly require that oral testimony be presented at a preliminary injunction hearing, some type of evidence which substantiates the pleadings is implicitly required by subsection (a)(2) of the rule.' " (quoting Bamberg v. Bamberg, 441 So.2d 970, 971 (Ala. Civ. App. 1983) ) ).[4] Further, Rule 65(c), Ala. R. Civ. P., requires that security, such as a bond, see Rule 65.1, Ala. R. Civ. P., be given unless the trial court makes a specific finding, based upon evidence, that one or more of certain exceptions exists. Spinks v. Automation Pers. Servs., Inc., 49 So.3d 186, 191 (Ala. 2010). It does not appear that security was given by the plaintiffs in this case, and the trial court did not state that an exception existed.
According to the defendants, there is no plausible allegation that the failure to preserve digital ballot images would cause the plaintiffs imminent harm because the paper ballots, from which any digital ballot image would be made, will still exist after the election. Further, there is no reasonable chance for success on the merits because the Secretary of State is not empowered to order that electronic voting machines be set in a particular fashion as the plaintiffs requested-instead, the local probate judge is the chief elections official in each county, and the Secretary of State offers only "guidance" to local election officials and could merely request-not order-that local election officials preserve the digital ballot images. See Ala. Code 1975, § 17-1-3 (providing that "[t]he Secretary of State is the chief elections official in the state and shall provide uniform guidance for election activities" and that "[t]he judge of probate is the chief elections official of the county"). Thus, the defendants argue, there is no recourse for any failure to comply with an order issued by the Secretary of State, like the one ordered to be sent by the trial court. Finally, the defendants argue that "equities also weigh against the plaintiffs" because an order by the Secretary of State purporting to direct local election officials "to make major last-minute changes to the machines" the evening before the December 12 election was "likely to cause confusion" and "disrupt election activities" in that such an order would likely be read to *861 require action on their part.[5]
The preliminary injunction directed the defendants to take action regarding the December 12 special election for United States Senate. That election has already occurred. Therefore, the question is whether the defendants' challenge to the merits of that injunction is now moot.
"This Court has often said that, as a general rule, it will not decide questions after a decision has become useless or moot." Arrington v. State ex rel. Parsons, 422 So.2d 759, 760 (Ala. 1982).
" ' "A moot case or question is a case or question in or on which there is no real controversy; a case which seeks to determine an abstract question which does not rest on existing facts or rights, or involve conflicting rights so far as plaintiff is concerned." ' Case v. Alabama State Bar, 939 So.2d 881, 884 (Ala. 2006) (quoting American Fed'n of State, County & Mun. Employees v. Dawkins, 268 Ala. 13, 18, 104 So.2d 827, 830-31 (1958) ). 'The test for mootness is commonly stated as whether the court's action on the merits would affect the rights of the parties.' Crawford v. State, 153 S.W.3d 497, 501 (Tex. App. 2004) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex. 1993) ). 'A case becomes moot if at any stage there ceases to be an actual controversy between the parties.' Id. (emphasis added) (citing National Collegiate Athletic Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999) ).
"...'A moot case lacks justiciability.' Crawford, 153 S.W.3d at 501. Thus, '[a]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events.' Case, 939 So.2d at 884 (citing Employees of Montgomery County Sheriff's Dep't v. Marshall, 893 So.2d 326, 330 (Ala. 2004) )."
Chapman v. Gooden, 974 So.2d 972, 983-84 (Ala. 2007).
The December 11 order was directed solely to the December 12 election; that election has taken place. Thus, a reversal of the order on the merits would not affect the rights of the parties. To the extent that the defendants challenge the propriety of the preliminary injunction, their challenge in this Court is moot.
B. The defendants' challenge to the trial court's jurisdiction
The defendants also challenge the trial court's jurisdiction over the plaintiffs' entire action. Although the complaint appears to seek relief primarily regarding the December 12 special election, it also seeks relief regarding future elections, specifically, "all elections scheduled in 2018." All those elections have not yet occurred; therefore, that portion of the action is not moot, and the issue whether *862 the trial court has jurisdiction over the remainder of the action remains ripe for review.
A challenge to a trial court's subject-matter jurisdiction based on the plaintiff's alleged lack of standing is reviewable by a petition for a writ of mandamus. Ex parte HealthSouth Corp., 974 So.2d 288, 292 (Ala. 2007). This Court will issue a writ of mandamus when the petitioner shows: " '(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' " Ex parte General Motors of Canada Ltd., 144 So.3d 236, 238 (Ala. 2013) (quoting Ex parte BOC Grp., Inc., 823 So.2d 1270, 1272 (Ala. 2001) ).
The trial court did not, and has not, ruled on the defendants' motion to dismiss. Instead, after the order entering the preliminary injunction was issued, the trial court set a hearing to determine whether the injunction should be made permanent. Because the trial court granted the plaintiffs partial relief and the defendants thus had no choice but to file this petition, and further given that it appears that the trial court does not intend to address this threshold issue before holding a final hearing on the merits of the action, we consider the defendants' challenge.
The concept of "standing" refers to a plaintiff's ability to bring the action; the plaintiff must have a legally sufficient interest in that lawsuit, and, if he or she does not, the trial court does not obtain jurisdiction over the case:
" 'To say that a person has standing is to say that that person is the proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.' Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala. 1996). 'Standing ... turns on "whether the party has been injured in fact and whether the injury is to a legally protected right." ' [ State v. Property at] 2018 Rainbow Drive, 740 So.2d [1025, 1027 (Ala. 1999) ] (quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo. 1998) (Kourlis, J., dissenting) ) (emphasis omitted). In the absence of such an injury, there is no case or controversy for a court to consider. Therefore, were a court to make a binding judgment on an underlying issue in spite of absence of injury, it would be exceeding the scope of its authority and intruding into the province of the Legislature. See City of Daphne v. City of Spanish Fort, 853 So.2d 933, 942 (Ala. 2003) ('The power of the judiciary ... is "the power to declare finally the rights of the parties, in a particular case or controversy ...." ' (quoting Ex parte Jenkins, 723 So.2d 649, 656 (Ala. 1998) ) ) ...."
Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1256 (Ala. 2004).
In determining whether a party has standing in Alabama courts, we are guided by whether the following exist: "(1) an actual, concrete and particularized 'injury in fact'-'an invasion of a legally protected interest'; (2) a 'causal connection between the injury and the conduct complained of'; and (3) a likelihood that the injury will be 'redressed by a favorable decision.' " Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, L.L.C., 890 So.2d 70, 74 (Ala. 2003) (quoting *863 Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ).[6] In their motion to dismiss,[7] the defendants contended that the plaintiffs failed to demonstrate all three of these elements; however, we address primarily one: Whether the complaint sufficiently alleges that the plaintiffs suffered an injury in fact.
" 'Injury will not be presumed; it must be shown.' " Town of Cedar Bluff, 904 So.2d at 1256 (quoting Jones v. Black, 48 Ala. 540, 543 (1872) ). "A party's injury must be 'tangible,' see Reid v. City of Birmingham, 274 Ala. 629, 639, 150 So.2d 735, 744 (1963) ; and a party must have 'a concrete stake in the outcome of the court's decision.' " Kid's Care, Inc. v. Alabama Dep't of Human Res., 843 So.2d 164, 167 (Ala. 2002) (quoting Brown Mech. Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala. 1983) ). The plaintiffs "must allege 'specific concrete facts demonstrating that the challenged practices harm [them], and that [they] personally would benefit in a tangible way from the court's intervention.' " Ex parte HealthSouth, 974 So.2d at 293 (quoting Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (footnote omitted) ). At a minimum, they must show that they personally have suffered some actual or threatened injury as a result of the purportedly illegal conduct. Stiff v. Alabama Alcoholic Beverage Control Bd., 878 So.2d 1138, 1141 (Ala. 2003).
In Town of Cedar Bluff, this Court addressed an allegation that the holding of a purportedly illegal election constituted an "injury in fact" for purposes of standing:
"[The plaintiffs] state that citizens and voters have a 'universally accepted' and legally protected right to valid elections. Therefore, they argue, citizens and voters, including [the plaintiffs], suffer an injury when an invalid election is held as the result of an unconstitutional statute. However, this allegation, without more, is insufficient to establish an injury because [the plaintiffs] have failed to state with 'particularity' in what respect they were injured by the fact that the election was held-they have merely made the conclusory allegation that the election caused an injury because it was allegedly unconstitutional."
904 So.2d at 1257.
In the instant case, the plaintiffs' allegations of injury are even less "particularized" than those in Town of Cedar Bluff. " 'By particularized, we mean that the injury must affect the plaintiff in a personal *864 and individual way.' " 904 So.2d at 1257 n.3 (quoting Lujan, 504 U.S. at 560 n.1 ). The plaintiffs state in their complaint that the failure to retain digital ballot images "infringes upon their right to a fair and accurate election." Complaint, ¶ 3. They further state that, "[w]ithout the preservation of these digital ballot images, [their] rights to a fair and accurate election could be denied." Complaint, ¶ 18. These, however, are only "conclusory allegations" and speculative at that. There is no allegation as to how the failure to retain digital ballot images or how the absence of digital ballot images would infringe upon the fairness and accuracy of an election. In fact, the complaint insinuates that there is only a possibility that the absence of any digital images "could" impact the fairness and accuracy of elections. Further, although the complaint mentions "post-election adjudication," which we presume implicates a recount of ballots or an election challenge, it implies only that it is "possible" that the digital ballot images might have some further use. Finally, the complaint acknowledges that these digital ballot images are images of the actual paper ballots. There is no dispute in this mandamus proceeding that all the actual paper ballots are retained.
These allegations do not demonstrate how the "challenged practices harm" the plaintiffs in a concrete way; how they would personally suffer the threatened injury, which is itself described only as a mere speculative possibility; or how they would benefit in a "tangible way" by a judgment in their favor. Ex parte HealthSouth, 974 So.2d at 293, and Stiff, supra. Instead, they allege only that they "could" be harmed. As Town of Cedar Bluff indicates, these allegations are insufficient. Therefore, because the complaint insufficiently alleges that the plaintiffs have standing, the trial court lacks jurisdiction over the action. We therefore direct that the case be dismissed.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Main, Wise, Bryan, Sellers, and Mendheim, JJ., concur.
Shaw, J., concurs specially.
Parker, J., concurs in the result.
SHAW, Justice (concurring specially).
I am the author of the main opinion; I write specially to note the following.
As I have previously written, I do not believe that the test for determining standing under federal law set forth in Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), is always applicable to determine whether standing exists for purposes of Alabama law. In my view, " 'standing' under Alabama law exists where the legislature has specifically provided a person with a cause of action ... and where the interests of the parties are sufficiently 'adverse.' " McDaniel v. Ezell, 177 So.3d 454, 459 (Ala. 2015) (Shaw, J., dissenting). Further, "[t]he focus of Alabama law regarding standing, generally, is on whether the parties have a 'sufficient personal stake in the outcome' in the case, whether their interests are sufficiently 'adverse,' and whether the plaintiff is 'so situated' that he or she will bring 'the requisite adverseness' to the proceeding." Ex parte Alabama Educ. Television Comm'n, 151 So.3d 283, 294 (Ala. 2013) (Shaw, J., dissenting).
As I discussed in my dissent in Ex parte Alabama Educational Television Commission, 151 So.3d at 293-94 (Shaw, J., dissenting), the standing analysis in Lujan is closely tied to the "case or controversy" provision in Article III of the United States Constitution, but the Alabama Constitution of 1901, Art. VI, § 139 (a), does *865 not have the same language as is found in Article III. Nevertheless, "I believe that in ... general challenges to government action, the Lujan analysis is helpful." Ex parte Alabama Educ. Television Comm'n, 151 So.3d at 294 n.11 (Shaw, J., dissenting). The Lujan decision's guidance regarding the sufficiency of a party's injury is similarly helpful in addressing the lack of standing for purposes of Alabama law in the instant case, where there is a challenge to government action and no specifically tailored recourse has been provided by statute. The Lujan decision, however, does not compel a particular result.

Contrary to the instruction in the order that the voting machines be "set" to "preserve all digital ballot images," the trial court had indicated at the hearing that it would not order that the machines be reprogrammed. A transcript of the hearing was not completed until December 29, 2017, and was not provided to this Court until January 1, 2018.

Although the December 11 order is at times described as a temporary restraining order, because notice of the proceedings was given to the defendants and a hearing took place it is actually properly considered a preliminary injunction. See Rule 65, Ala. R. Civ. P., and Patton v. Cumberland Lake Country Club, Inc., 703 So.2d 376, 380-81 (Ala. Civ. App. 1997).

Generally, an appellate challenge to the merits of a preliminary injunction is by direct appeal; the defendants maintain in their petition that, to the extent that their challenge to the merits of the preliminary injunction should have been brought in an appeal, their petition should be considered as such. See Ex parte B2K Sys., LLC, 162 So.3d 896, 907 (Ala. 2014) (treating a portion of a writ of mandamus challenging the issuance of a preliminary injunction as a direct appeal under Rule 4(a)(1)(A), Ala. R. App. P.).

Motions, statements in motions, and arguments of counsel are not evidence. Westwind Techs., Inc. v. Jones, 925 So.2d 166, 171 (Ala. 2005). As noted above, it does not appear that any evidence was submitted in the trial court before the preliminary injunction was issued.

On December 19, after the preliminary injunction was issued and after this Court stayed the proceedings, the defendants filed in the trial court an affidavit by Mark Kelley, "Vice President for Ballot Management Services" for Election Systems and Software ("ES & S"), the vendor of the electronic voting machines. He testified that some machines in the state do not create digital images at all. Some 2,000 machines, however, do have this ability, but "most" machines are "coded" to save only digital images of write-in ballots. The process for changing the digital-image-retention settings on the voting machines would require the machines to be reprogrammed and then tested at a facility in Birmingham, and it would not have been possible to do that in a single day. That affidavit was not before the trial court at the time it issued the preliminary injunction, and it is not properly before this Court. Ex parte Harris, 216 So.3d 1201, 1207 (Ala. 2016) ("On review by mandamus, this Court must look only at the facts and evidence that were before the trial court.").

The concept of "standing" is generally relevant only in public-law cases, such as the instant action. Gardens at Glenlakes Prop. Owners Ass'n, Inc. v. Baldwin Cty. SewerServ., LLC, 225 So.3d 47, 53 (Ala. 2016).

The defendants' specific argument in their petition challenging the plaintiffs' standing is limited, but understandably so-this petition had to be filed, and was filed, a few hours after the trial court's order was issued. Nevertheless, this Court may, in considering a mandamus petition, raise on its own issues regarding the trial court's lack of jurisdiction, even if those specific issues are not raised by the parties. Ex parte Progressive Specialty Ins. Co., 31 So.3d 661, 663 n.2 (Ala. 2009) ("Although Progressive does not raise in its petition the precise jurisdictional issue we address, the ' "[l]ack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu." ' " (quoting Ex parte Berry, 999 So.2d 883, 888 (Ala. 2008), quoting in turn Ex parte Smith, 438 So.2d 766, 768 (Ala. 1983) ) ). See also Ex parte T.C., 63 So.3d 627, 630 (Ala. Civ. App. 2010), superseded on other grounds by statute, as recognized in Ex parte F.T.G., 199 So.3d 82, 86 (Ala. Civ. App. 2015) ("[O]ur review of such questions [regarding the lack of subject-matter jurisdiction] is not limited to grounds specifically raised in a mandamus petition because a lack of subject-matter jurisdiction is not subject to waiver by the parties, and it is our duty to consider a lack of subject-matter jurisdiction ex mero motu.").